In re James H. **TEMPLE** and Barbara J. **Temple,** Debtors.

**UNITED STATES of America,**
**Plaintiff-Appellant,**

v.

James H. **TEMPLE** and Barbara J. **Temple, Defendants-Appellees.**

Civ. No. ED 81–1137.

United States District Court,
W.D. Arkansas,
El Dorado Division.

Aug. 6, 1982.

Larry R. McCord, Fort Smith, Ark., for plaintiff-appellants.

Evans Benton, Little Rock, Ark., for defendants-appellees.

## MEMORANDUM OPINION AND ORDER

### OREN HARRIS, District Judge.

In this cause, the appellant, the United States of America (Appellant), appeals from a ruling of the United States Bankruptcy Court for the Western District of Arkansas, El Dorado Division[1], denying the appellant's objection to the confirmation of the Chapter 13 plan of the debtor-appellees, James H. and Barbara J. Temple (Debtors), and the confirmance of the plan by that court. This Court has jurisdiction of this appeal by virtue of 28 U.S.C. § 1334. All of the records and briefs on this appeal have been filed with this Court. After reviewing the materials and the briefs submitted, the Court is now ready to make a determination on this matter.

### STATEMENT OF FACTS

The debtors filed a Chapter 13 bankruptcy petition in the Bankruptcy Court for the Western District of Arkansas, El Dorado Division, Cause No. 81–37, on June 11, 1981. Among the transaction involved in this proceeding are six separate loans that the appellant, acting through the Farmers Home Administration (FHA), made to the debtors, dated October 25, 1977 (when three of the loans were made); May 18, 1978; February 7, 1979 and May 18, 1979. The total amount of the loans was $95,000.00, plus interest at rates varying from 3% per annum to 9½% per annum. The three notes of October 25, 1977 are partially secured by a first real estate mortgage against a 20-acre tract and a 2-acre tract upon which the dwelling of the debtors is located. Each tract has an agreed fair market value of $20,000.00. All six unpaid notes are secured by a perfected security interest in the farming equipment of the debtors. The fair market value of the farming equipment is $10,860.00.

The unpaid balance of the six FHA loans at the time of the filing of the bankruptcy petition was $89,990.60 principal, plus $19,396.95 accrued interest. Approximately 90% of this obligation is secured by the first real estate mortgage. No portion of the original debt has been paid by the debtors except for the original sum of $5,500.40 applied against the principal and the sum of $1,010.30 applied against the interest. Four of the six unpaid notes were due prior to the filing of the bankruptcy petition by the debtors.

The appellant has a secured claim in the amount of $50,860.00. This represents the fair market value of the security on the notes, calculated pursuant to 11 U.S.C. § 506(a). This section states that to determine the amount of a secured claim the fair market value of all of the security for a loan is added and applied to the amount of the indebtedness. The fair market value of the security becomes the secured claim. Any amount in excess of the fair market value becomes the unsecured claim. The

1. The Honorable Charles W. Baker, United States Bankruptcy Judge, State of Arkansas.

amount of the unsecured claim in this case is $58,536.55.

The debtors filed with the bankruptcy court their Chapter 13 plan, pursuant to 11 U.S.C. § 1321 et seq. The debtors planned to satisfy the secured claim of the appellant by first surrendering the 20-acre tract and the farm equipment to the appellant, and secondly by paying 60 monthly installments of $406.00 per month. In return, they would retain the 2-acre tract with their residence. These payments would satisfy the $20,000.00 of the secured interest remaining after surrender of the 20-acre tract and the farm equipment. The plan proposed to pay nothing at all on the appellant's unsecured claims of $58,536.55.

The appellant objected to the plan of the debtors because the debtors proposed to pay nothing on the appellant's unsecured claim. The appellant pointed out that the plan and the statement of the debtors listed a future monthly gross income of $3,563.00, of which $2,137.80 would be take home pay. Monthly expenses were estimated to be $1,396.00. The debtors planned to pay $600.00 monthly to the trustee. From this, the trustee was to pay $406.00 per month for 60 months on the appellant's secured claim, the remaining $194.00 was to be used to pay off other secured debts. A secured debt of $3,200.00 owed to the First National Bank of Crossett, Arkansas was to be paid in 24 months. At the conclusion of this 24 months, the payments to the trustee are to be reduced to $480.00 per month. This would leave the debtors with an estimated surplus of $261.80 per month. The appellant asserted that some sort of payment against the unsecured debts is required and the failure of the debtors to so provide lacked the "good faith" required by 11 U.S.C. § 1325(a)(3). For this reason the appellant opposed confirmance of the debtors' plan.

The Bankruptcy Court, after a hearing on the matter, denied the appellant's objection and confirmed the plan. The Court found that the requirements of 11 U.S.C. § 1325 for confirmation of the plan were met. The plan was found to have been made in "good faith". Although the Court recognized that no payments on the unsecured claims were proposed, under the circumstances of the case the Court felt that the plan was proper and confirmed it on October 26, 1981.

The appellant then brought this appeal to this Court, asserting that the ruling of the Bankruptcy Court was erroneous for failing to propose any payment to the unsecured creditors' claim. Lack of "good faith" is also asserted. The issues before this Court are whether a Chapter 13 plan which does not propose any payments to unsecured claims can be confirmed under 11 U.S.C. § 1325, and whether the plan filed in this case was made in "good faith". In doing this, the Court will examine the meaning of "good faith" in the context of § 1325(a)(4), and the statutory scheme and purposes of a Chapter 13 plan.

## CONCLUSIONS OF LAW

The scheme and purposes of Chapter 13 (of Title 11) of the Bankruptcy Code have been the subject of much litigation. In the case of *In re Iacovoni*, 2 B.R. 256 (Bkrtcy.D. Utah, C.D.1980), the Bankruptcy Court considered eight Chapter 13 plans. None of the plans proposed payments to the unsecured claimants. That court, like this Court, had to determine whether a plan that proposes no payment to the unsecured claimants meets the "good faith" requirement of 11 U.S.C. § 1325(a)(3). The Utah court found that the plans were not made in "good faith" and refused to confirm them.

In order to determine the objectives and purposes of Chapter 13, the court in *Iacovoni* studied the legislative history surrounding the enactment of Chapter 13 and the provisions for the filing of plans. There, as here, if the proceeding had been a Chapter 7 liquidation, the unsecured claimants would have received nothing. So by making no payments, the debtor would satisfy the requirements of § 1325(a)(4), which minimally requires a payment to unsecured claimants of an amount "not less than the amount that would be paid on such date (the effective date of the plan)." The debtors in the present case, as did the debtors in

the *Iacovoni* case, take the position that all § 1325 requires is a payment embodied in § 1325(a)(4), therefore, a plan which provides for no payment to unsecured creditors would be valid and in "good faith" if unsecured creditors would also receive nothing under Chapter 7.

The court in *Iacovoni* rejected this theory, finding that this rationale would render Chapter 13 meaningless and its purpose would not be met.

"The legislative history (also) reveals that Chapter 13 was devised and promulgated as a vehicle for the voluntary repayment of debts.... in preference to incurring the stigma . and other consequences of Bankruptcy...." 2 B.R., at 263.

Also, the court in *Iacovoni* found, after a review of the House reports and Committee recommendations:

"The payment contemplated by the statute and its proponents are to creditors holding unsecured claims. Holders of secured claims receive similar protection under Chapter 7 and 13.... If the payments referred to in the statute ... meant payments on secured claims, then those payments required would be essentially the same as those required under Chapter 7. Such an interpretation would disregard the premise upon which Chapter 13 is based. It would be anomalous, for example, for proponents to recommend, and for Congress to enact, the incentive which encourage Chapter 13 filings if the payments thereby promoted were similar payments on secured claims as required under Chapter 7. Chapter 13 does not allow the confirmation of a plan which proposes no payments on unsecured claims.... Partial payments of unsecured debts under Chapter 13 is preferrable to almost certain non-payment of those debts in straight bankruptcy." 2 B.R., at 264, 265.

This Court is pursuaded this is the rationale behind Chapter 13. It protects both the debtor and the unsecured creditor. The debtor is protected from the harshness of a Chapter 7 liquidation. And as a condition for this protection, the debtor is required to make payments to the unsecured creditor. This enables the unsecured creditor to regain some of the money owed and which would not be obtainable in a straight Chapter 7 bankruptcy.

Another court attempted to determine the intent of Congress and the purposes behind a Chapter 13 plan, particularly, 11 U.S.C. § 1325, in *In re Seman*, 4 B.R. 568 (Bkrtcy.S.D.N.Y., 1980). There, as here, the debtors Chapter 13 plan offered nothing to unsecured creditors. The debtors sought confirmance stating there had been compliance with § 1325(a)(4), which states unsecured creditors will receive "not less than" the amount that would be paid under a Chapter 7 plan. The court in *Seman* refused to confirm the plan, finding a lack of "good faith". The court found the purpose of Chapter 13, and especially § 1325, was to afford the debtor a chance to avoid liquidation under Chapter 7, and to allow a chance to pay off some or all of the debts. To do this, Chapter 13 requires payments to be made to unsecured creditors. The debtor's position however, was that the plan was in compliance with § 1325(a)(4), that is the unsecured claimant would be paid the amount it would have received under a Chapter 7 liquidation.

The court in *Seman* rejected this theory. It found that the purpose of Chapter 13 required payments to unsecured creditors.

"A debtor who does not propose to make any payments to secured creditors (who) would receive nothing if a petition were filed under Chapter 7, is not given the alternative of avoiding the consequences of non-dischargeability of debts under Chapter 13. A disguised Chapter 7 liquidation under Chapter 13 would subvert the purpose of Chapter 13 expressed in the House Report No. 95-595, 95th Cong., 1st Sess. (1977) 118, U.S.Code Cong. and Admin.News 1978, p. 6079: 'The purposes of Chapter 13 is to enable an individual, under court supervision and protection, to develop and perform under a plan for the repayment of his debts over an extended period 4 B.R., at 570.

See also *In re Heard*, 6 B.R. 876 (Bkrtcy.W. D.Ky., 1980); *In re Sadler*, 3 B.R. 536

(Bkrtcy.E.D.Ark., 1980); *In re Schongalla,* 4 B.R. 360 (Bkrtcy.D.Md., 1980).

Also, this Court is referred to the case of *In re Terry,* 630 F.2d 634 (8th Cir., 1980). An appeal was taken to the Eighth Circuit Court of Appeals from the confirmation of a plan by the Bankruptcy Court for the Western District of Arkansas. In this plan there was no provision for payments to unsecured creditors. All of the creditors were unsecured. Further, the debtors did not have sufficient income to make the required payments under a Chapter 13 plan. The Court of Appeals held that for a Chapter 13 plan to be approved, a debtor must be able to and make "regular payments" under the plan. A zero payment plan like the one in *Terry* is not in "good faith" and is not to be confirmed.

The Court is of the opinion that Chapter 13 requires that the debtor's plan propose payments to unsecured creditors. Notwithstanding § 1325(a)(4), the § 1325(a)(3) requirement of "good faith" and the statutory scheme and purpose of Chapter 13, read as a whole, requires something other than zero payments on unsecured claims. Therefore, the bankruptcy court's confirmance of the debtors' plan was erroneous.

The debtors argue that no payments were proposed to the unsecured creditor to preserve their residence from foreclosure. They cite *Matter of Johnson,* 6 B.R. 34 (Bkrtcy.N.D.Ill., W.D., 1980) for the proposition that when the purpose and the desire of the debtors is in preserving their residence, then to propose a zero or a minimum payment plan is not erroneous and the plan can be confirmed. The Court does not contend that the debtors goal in preserving their residence should not be considered by the bankruptcy court. And the Court agrees that such, if proven by the circumstances to be an overriding concern, can be a basis for confirmance of a "minimal" payment in a plan. But the Court views it as allowing only a "minimal" payment, and not to allow a zero payment plan. The Court fails to see how such a concern can be the basis for proposing no payments at all, especially where it is shown that there is an immediate surplus of $141.80 per month, and that after 24 months a further surplus of $120.00 a month will be present. As the appellant conceeds in its brief, it does not expect to receive the full amount of its unsecured claim. But when it appears that the debtor is able to pay some of the unsecured claim and still be able to satisfy the goal of preserving their residence, then it is preferable for appellant to receive something. This is especially true since Chapter 13 and § 1325 require some sort of payment to be made to the unsecured claimants as a condition of confirmation. A revised plan might be devised which will satisfy all concerned, or it may be that the bankruptcy court, upon a rehearing, may decide that the case is better handled pursuant to Chapter 7.

In conclusion, it is the opinion of the Court that under Chapter 13, and especially 11 U.S.C.A. § 1325, payments are required to be made to the unsecured creditors in order for a plan to be confirmed.

The Court reverses the decision of the Bankruptcy Court for the Western District of Arkansas confirming the plan of the debtors James H. Temple and Barbara J. Temple and remands the matter back to that court for further proceedings in accordance with this opinion.