**In re Erline ALLEN, Debtor.**

**Bankruptcy No. 2–86–03652.**
**SSAN(S) 578–34–2782.**

United States Bankruptcy Court,
S.D. Ohio, E.D.

April 21, 1987.

William A. Semons, Columbus, Ohio, for debtor.

Erline Allen, Robert J. Morje, Columbus, Ohio, for General Credit Co.

Frank M. Pees, Worthington, Ohio, Chapter 13 Trustee.

### ORDER SUSTAINING OBJECTION TO CONFIRMATION

B.J. SELLERS, Bankruptcy Judge.

This matter is before the Court upon an objection to confirmation of the Chapter 13 plan proposed by debtor Erline Allen. The objection, filed on behalf of General Credit Company of Ohio ("GCC"), was heard by the Court.

The debtor has proposed a Chapter 13 plan which includes payments of $189 each

month to the Chapter 13 trustee for payment of her ongoing obligation to Manufacturers Hanover Mortgage Corporation ("Manufacturers"), the holder of a note secured by a first mortgage against the debtor's residential real property; curing the arrearage on her obligation to Manufacturers; payment in full to GCC, the holder of a note secured by a second mortgage against that same residential property; and a 100% dividend for allowed unsecured claims. GCC, which has rejected the debtor's plan, has been offered a discount factor of 10% expressed as a market rate of interest, as required in this circuit by *Memphis Bank & Trust Co. v. Whitman (In re Whitman)*, 692 F.2d 427 (6th Cir. 1982).

It is uncontested that the value of the debtor's residence is substantially in excess of the remaining obligations to Manufacturers and GCC. Therefore, GCC is fully secured. As contemplated by the plan, repayment of GCC will occur over a longer period of time than that set forth in its original contract which called for the final payment to be made by December 9, 1988.

GCC's objection to the debtor's plan is premised upon the reduction in its interest from the 24% annual rate provided as a term of the note underlying its mortgage to the 10% annual rate contemplated by the debtor's plan. In support of that position GCC asserts that 11 U.S.C. § 1322(b)(2) prohibits any alteration of that contractual term.

Section 1322(b)(2) of Title 11 United States Code states in relevant part:

"(b) ... the plan may—
(2) modify the rights of holders of secured claims, *other than a claim secured only by a security interest in real property that is the debtor's principal residence ...*" (Emphasis added).

That subsection has been the source of much judicial discussion since first enacted on November 6, 1978 for application to cases filed on or after October 1, 1979. *See In re Hobaica*, 65 B.R. 693 (Bankr.N. D.N.Y.1986); *In re Neal*, 10 B.R. 535 (Bankr.S.D.Ohio 1981); and *In re Simp-*

*kins*, 16 B.R. 956 (Bankr.E.D.Tenn.1982). The language which finally appeared as the second clause of § 1322(b)(2) was inserted in the final compromise bill leading to the Bankruptcy Reform Act. *Neal*, 10 B.R. at 536 and 539. The impetus for inclusion of that exception to the modification power, applicable only to claims secured "wholly" or "only" by mortgages against a debtor's residence, apparently came from the long-term purchase-money mortgage industry which sought to codify a policy protecting the stability of such loans by preserving intact all contractual terms of those obligations during the Chapter 13 process with only the limited exception for curing arrearages found in § 1322(b)(5). (Compare S. 2266, 95th Cong.2d Sess. § 1322(b)(2) (1978) with 11 U.S.C. § 1322(b)(2)); *United Companies Financial Corp. v. Brantley (In re Brantley)*, 6 B.R. 178, 189 (Bankr.N. D.Fla.1980); *Simpson*, 16 B.R. at 963. The language as enacted, however, does not reflect any such limitation in its scope.

This Court believes the sweep of the statute is overbroad to the extent it protects not only lenders with purchase-money mortgages, but also entities extending loans for purposes unrelated to the purchase or improvement of the real property against which the related mortgages operate. Extension of the modification prohibition to mortgage claims taken as security for loan proceeds used to repay other obligations, to purchase various consumer items, or to finance a business unduly favors creditors holding residential real property collateral over creditors with security interests in personalty, with mortgages against non-residential real property, or whose borrowers' accumulated equity is in an asset other than a residence.

Certainly the lender who has a nonpurchase-money mortgage which is fully secured by a debtor's residence is constitutionally entitled to be protected in its property interest in that residence to the extent the associated real property has value to support that interest. 11 U.S.C. § 506(a). Under the provisions of Title 11, United States Code, that creditor is also entitled to receive compensation for the time value of

the extended repayment of that obligation. 11 U.S.C. § 1325(a)(5). There is no discernible reason, however, why such protection should also extend to maintenance of the contractual interest rate for the underlying note where such rate is in excess of the current market rate. Such protection for the lender's expected profit from the use of its funds serves no clearly-defined societal purpose, decreases the funds available for other creditors, and diminishes the debtor's ability to reorganize successfully under Chapter 13. Inability to modify that contractual rate results in allocation of a larger portion of the debtor's limited assets to one type of claimant at the expense both of claimants secured by different types of collateral, who receive only a market rate as a "discount factor" for payment over time (11 U.S.C. § 1325(a)(5)), and of general unsecured claimants, who receive no interest for extended repayment unless the debtor is solvent. Further, payment of the higher rate to those protected creditors operates to reduce the funds available for repayment of principal to unsecured claimants. The effect of a provision such as § 1322(b)(2) is to mandate an inequitable distribution unrelated to the implementation of any affirmatively considered and adopted policy.

However, in our governmental system, this Court's function does not encompass legislative enactment. Accordingly, while the Court is compelled to express its views regarding the overbreadth of § 1322(b)(2), as enacted, it must interpret that subsection as codified even if the resultant finding is at odds with the Court's vision of the way the statute should have been drafted. In this regard the Court is also bound by an appellate decision of its district court in *In re Bradshaw*, 56 B.R. 742 (S.D.Ohio 1985).

Based upon the foregoing, the Court finds that the debtor's proposal to extend the repayment term and lower the contractual interest rate for GCC's claim, which is fully secured only by a security interest in the debtor's residential real estate, is prohibited by the express terms of 11 U.S.C. § 1322(b)(2). Accordingly, GCC's objection is SUSTAINED, and confirmation of the debtor's plan shall be, and the same is, hereby, DENIED for failure to meet the test for confirmation set forth in § 1325(a)(1).

The debtor shall have twenty (20) days from the date of entry of this order to take whatever action with respect to this case as may be appropriate. If no such action is taken, the Court shall dismiss this case.

IT IS SO ORDERED.