**In re Melvin LIGON, Debtor.**

**Bankruptcy No. 88 B 18006.**

United States Bankruptcy Court, N.D. Illinois, E.D.

Feb. 27, 1989.

Rodney Hughes Brooks, Chicago, Ill., for debtor, Melvin Ligon.

Richard B. Aronow, Shapiro & Kreisman, Deerfield, Ill., for creditor, Fleet Mortg. Corp.

MEMORANDUM, OPINION & ORDER

ROBERT E. GINSBERG, Bankruptcy Judge.

### FACTS

■ This matter comes before the court on the motion of Fleet Mortgage Company

---

("Fleet") to annul the automatic stay imposed by 11 U.S.C. § 362(a) to allow Fleet to complete foreclosure on this Chapter 13 debtor's home.[1] The debtor, Melvin Ligon, bought his home on November 28, 1984. Fleet lent him $43,000 to finance the purchase, which loan was secured by a first mortgage on the property. On August 18, 1987, Ligon filed a Chapter 13 petition. That case was dismissed on December 3, 1987. On December 21, 1987, the debtor filed a Chapter 7 petition. Fleet was duly scheduled in the Chapter 7 case, and on April 29, 1988, Ligon received a discharge in that case. During the Chapter 7 case, the debtor and Fleet did not enter into a reaffirmation agreement in accordance with the requirements of 11 U.S.C. §§ 524(c) and (d) or otherwise. However, during the course of the Chapter 7 case Fleet did move successfully to have the stay lifted and began foreclosure proceedings against Ligon's home in the district court.

Ligon's payment history on the mortgage is poor. He has made no mortgage or tax escrow payments since February of 1987. As a result of his failure to live up to his payment obligations, Fleet's claim on the original $43,000 loan has grown to some $56,000. Of course, Ligon had no defense to the foreclosure action, and a judgment of foreclosure and sale was entered. However, before a commissioner's sale could be conducted to complete the foreclosure, Ligon filed a second Chapter 13 petition on November 22, 1988, thereby automatically staying Fleet's foreclosure proceedings. See 11 U.S.C. § 362(a). In his Chapter 13 plan, Ligon proposes to cure the $13,000 in arrears on the mortgage over a thirty-one month period while making current postpetition mortgage payments outside the plan directly to Fleet.

Fleet's motion to annul the stay is in effect an objection to that plan. Fleet could raise questions of good faith in the debtor's filing of three bankruptcy cases in

a span of less than 18 months and by his pursuit of what has come to be known colloquially as "Chapter 20", i.e. filing a Chapter 7 case to discharge all of his other unsecured debts as well as his personal liability on his home mortgage, followed by a Chapter 13 case to cure and reinstate that mortgage. See 11 U.S.C. § 1325(a)(3). Fleet might also raise questions of feasibility given the debtor's payment history and series of bankruptcies over the first four years after the mortgage loan was made. See 11 U.S.C. § 1325(a)(6). Nevertheless, Fleet has chosen to raise neither good faith nor feasibility in its motion. Instead, Fleet's argument for annulling the stay is purely a legal one. Fleet's position is that since the debtor's personal liability on the mortgage was extinguished by the Chapter 7 discharge, the debtor, as a matter of law, cannot use Chapter 13 to cure and reinstate a mortgage on which he will never have any personal liability. The debtor counters that while it is true that after the Chapter 7 discharge he no longer had any personal liability on the mortgage, he did continue to own the property after the Chapter 7 case. As the debtor sees it, the Chapter 7 case did nothing more than transform Fleet's mortgage against his home from a recourse mortgage to a non-recourse mortgage, and there is no reason why he cannot use Chapter 13 to cure and reinstate that non-recourse mortgage.

### JURISDICTION AND PROCEDURE

This matter comes before the court on a motion to annul the stay under 11 U.S.C. § 362(d). Thus, it is a proceeding arising under the Bankruptcy Code. This court has jurisdiction over this proceeding under 28 U.S.C. § 1334(b) and the General Order of the United States District court for the Northern District of Illinois of July 10, 1984 referring bankruptcy cases and proceedings to this court under 28 U.S.C. § 157(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(G).

---

**1.** Why Fleet seeks to annul the stay rather than merely lift it is unclear from the face of the motion. Presumably Fleet wants the debtor's redemption time in its district court foreclosure case to be deemed to have continued to run while the Chapter 13 case was pending. If the stay is annulled, in effect, it is deemed to never have come into existence. *Albany Partners, Ltd. v. W.P. Westbrook (In re Albany Partners, Ltd.),* 749 F.2d 670, 675 (11th Cir.1984).

## DISCUSSION

The issue before the court is clear, i.e. whether a debtor is prohibited, as a matter of law, from first obtaining a discharge of all personal liability on a home mortgage in a Chapter 7 case and then subsequently using Chapter 13 to force the mortgagee to accept a cure of all preexisting defaults on that mortgage during the life of a Chapter 13 plan with the view that the debtor would thereafter make current mortgage payments on a timely basis and avoid foreclosure. The resolution of the issue is not nearly so clear.

This is not a case of first impression. The same question has been presented to a number of courts in the past. Unfortunately for this court, there is a clear split in the case law on point. One line of cases would allow Ligon to do exactly what he wants to do. The other line of cases would not allow him to use this Chapter 13 case to force a cure of the mortgage on Fleet in light of the fact that he has discharged his personal liability on the mortgage in his prior Chapter 7 case.

The line of cases supporting the debtor's efforts in this case reasons that while it is true that Ligon's personal liability on the mortgage was discharged by the Chapter 7 case under § 727(b), when that case was closed without the trustee selling the debtor's home, the home was abandoned to the debtor, i.e. title to the home reverted to the debtor. *See* 11 U.S.C. § 554(c).[2] Of course, while the Chapter 7 case extinguished Ligon's personal liability on the mortgage, it did not extinguish Fleet's lien on the home. Instead, the lien survived the Chapter 7 case. *Lindsey v. Federal Land Bank of St. Louis (Matter of Lindsey)*, 823 F.2d 189 (7th Cir.1987); *Downey Savings and Loan Association v. Metz, (Matter of Metz)*, 820 F.2d 1495, 1498 (9th Cir.1987); *In re McKinstry*, 56 B.R. 191, 193 (Bankr. D.Vt.1986). Thus, after the Chapter 7 case, unless and until Fleet completed foreclosure proceedings on the home, the relationship was analogous to a nonrecourse mortgage, i.e., the debtor owned the property subject to Fleet's lien but had no personal liability for any deficiency which might exist after foreclosure.

The logic follows under this line of cases that when Ligon filed Chapter 13, Fleet had a claim against him. This is true without regard to the convoluted definition of "claim" in 11 U.S.C. § 101(4). Instead this line of cases relies heavily on 11 U.S.C. § 102(2) which provides: " 'claim against the debtor' includes claim against property of the debtor". Since Fleet clearly has a claim against Ligon's property, the reasoning follows that Fleet as the holder of "a claim against the debtor" under 11 U.S.C. § 102(2) is a creditor of the debtor under 11 U.S.C. § 101(9)[3] notwithstanding the fact that the debtor has no personal liability on that claim. The reasoning then follows that as a creditor, Fleet holds a secured claim under 11 U.S.C. § 506(a).

That secured claim may be affected by a Chapter 13 plan. 11 U.S.C. § 1322(b)(2). Even if it is assumed, under a best case scenario for Fleet, that its lien is attributable to the original consensual mortgage rather than to operation of law in the Chapter 7 case, so that Fleet has a "security interest" in Ligon's home (*See* 11 U.S.C. § 101(45)), and thus Fleet can take advantage of the protection against home mortgage modification found in 11 U.S.C. § 1322(b)(2), § 1322(b)(5) permits an involuntary cure and reinstatement of the home

**2.** This assumes that the home was properly scheduled and there was no order of abandonment entered under 11 U.S.C. § 554(a) or (b) during the Chapter 7 case and no other disposition of the home under 11 U.S.C. § 725. Even if there was an abandonment of the home during the course of the Chapter 7 case, the abandonment would simply return the property to the one with the right to possess it at the time of the petition, i.e. the debtor. *See In re Perry*, 29 B.R. 787 (D.Md.1983), *aff'd* 729 F.2d 982 (4th Cir. 1982); *In re Gassaway*, 28 B.R. 842 (Bankr.N.D.

Miss.1983). In any case, abandonment would not affect Ligon's title to the property. Only a sale in the bankruptcy case or a foreclosure outside of bankruptcy could accomplish that result without Ligon's consent.

**3.** 11 U.S.C. § 101(9)(A) provides that " 'creditor' means—

(A) entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor;"

mortgage by a debtor over a reasonable period of time in a Chapter 13 plan.[4] Thus, this line of cases concludes that the plan proposed by Ligon is permissible under a technical reading of the Bankruptcy Code notwithstanding the discharge of his personal liability on the mortgage in the prior Chapter 7 case and can be confirmed if the other requirements of Chapter 13 such as good faith and feasibility are satisfied. *See generally, Metz,* 820 F.2d at 1498; *Matter of Hagberg,* 92 B.R. 809 (Bankr.W. D.Wis.1988); *Matter of Lagasse,* 66 B.R. 41, 43 (Bankr.D.Conn.1986); *In re Lewis,* 63 B.R. 90, 92 (Bankr.E.D.Pa.1986).

The other line of cases proceeds on several theories. One approach is that although what Ligon proposes to do to Fleet in this Chapter 13 case may be technically permissible under a literal reading of the Bankruptcy Code, it flies in the face of clearly expressed Congressional intent with respect to the treatment of home mortgages in Chapter 13 cases. A Chapter 13 debtor can use the Chapter 13 plan to cure arrears on the home mortgage over a reasonable period of time and to thus reinstate the mortgage even over the objection of a creditor secured solely by the home. *See* 11 U.S.C. §§ 1322(b)(2) and (5). However, that is all that a Chapter 13 debtor may force a home mortgagee to accept involuntarily in a Chapter 13 plan. A Chapter 13 debtor may not affect any other rights of a mortgage secured solely by the debtor's home. *See, e.g., In re Reeves,* 65 B.R. 898 (N.D.Ill.1986); *See also In re Allen,* 75 B.R. 344 (Bankr.S.D.Ohio 1987). Thus, for example, if the holder of the home mortgage is undersecured, the Chapter 13 debtor may not use § 506(d) to determine the relative amounts of such creditor's secured and unsecured claims and provide for paying the secured claim in full while paying

little or nothing on the unsecured portion of the claim. *In re Lattimore,* 69 B.R. 622, 625 (Bankr.E.D.Tenn.1987). Yet, indirectly, that is exactly what Ligon proposes to do. First, he is using Chapter 7 to strip away any possible personal liability on any possible deficiency claim should Fleet prove to be undersecured. Then he is using Chapter 13 to cure and reinstate only the secured portion of Fleet's claim.

If one assumes, as Fleet claims, that Fleet is owed some $56,000 on the loan, and the home is worth only $48,000, under the analysis provided for in 11 U.S.C. § 506(a), Fleet holds a secured claim in the amount of $48,000 and an unsecured claim in the amount of $8,000. While that unsecured claim is not allowable in this Chapter 13 case because of Ligon's earlier Chapter 7 discharge, 11 U.S.C. § 502(b)(1), assume for the sake of discussion that Ligon had not filed Chapter 7 and was still personally liable on the mortgage. If Ligon proposed to pay 100% on Fleet's secured claim and 0% on its unsecured claim in Chapter 13, his plan could not be confirmed as matter of law.[5] *Goeb v. Heid (In re Goeb),* 675 F.2d 1386, 1388–89 (9th Cir.1982); *Lattimore,* 69 B.R. at 625. At least one court has concluded that a debtor should not be allowed to do indirectly what he cannot do directly. Therefore, that court concluded that a debtor like Ligon should not be allowed to reinstate a home mortgage in a Chapter 13 case after escaping all personal liability on that mortgage in a Chapter 7 case, because that would result in an impermissible scale down. *In re Russo,* 94 B.R. 127, 129 (Bankr.N.D.Ill.1988).

Other cases denying debtors like Ligon access to Chapter 13 relief hold that after a debtor's personal liability on the mortgage is discharged, regardless of whether the debt is extinguished by the discharge or

---

**4.** This analysis assumes of course, that Fleet's only collateral is Ligon's home. If Fleet has any additional collateral, the limitation on the modification of its security interest found in § 1322(b)(2) and 1322(b)(5) does not apply and even the home mortgage could be adjusted in any way consistent with § 1325(a)(5). *See In re Hines,* 64 B.R. 684 (Bankr.D.Colo.1986); *In re Leazier,* 55 B.R. 870 (Bankr.N.D.Ind.1985).

**5.** Of course, this result is mandated by 11 U.S.C. §§ 1322(b)(2) and (b)(5) which do not allow a debtor to scale down the amount owed on a home mortgage in Chapter 13 where the house is the mortgagee's only collateral. This protection is particularly important to undersecured junior mortgages. *But see Kehm v. Citicorp Homeowners Service, Inc., (In re Kehm),* 90 B.R. 117 (Bankr.E.D.Pa.1988).

continues to exist subject to the defense of discharge in bankruptcy, the remaining rights of the mortgagee do not rise to the level of a "claim" as defined by § 101(4) of Bankruptcy Code because the mortgagee has no "right to payment" from the debtor under § 101(4)(A) or (B). Accordingly, the logic follows that the mortgagee is not the holder of a claim and thus is not a creditor for Bankruptcy Code purposes under 11 U.S.C. § 101(9) and therefore cannot be affected by a Chapter 13 plan. *McKinstry*, 56 B.R. at 193; *In re Binford*, 53 B.R. 307, 309 (Bankr.W.D.Ky.1985); *In re Brown*, 52 B.R. 6, 7 (Bankr.S.D.Ohio 1985).

Finally, some of the cases holding against Ligon's proposal hold that an involuntary cure of the mortgage in a Chapter 13 case following discharge of personal liability on the mortgage in a Chapter 7 case without reaffirmation in effect forces the mortgagee to accept an involuntary reaffirmation in contradiction of the policy found in §§ 524(c) and (d) of the Bankruptcy Code. *McKinstry*, 56 B.R. at 193; *Binford*, 53 B.R. at 309; *Brown*, 52 B.R. at 7; *Associates Financial Services Corporation v. Cowen, (Matter of Cowen)*, 29 B.R. 888, 895 (Bankr.S.D.Ohio 1983).

This court finds the line of cases which would allow Ligon to cure and reinstate his mortgage in this Chapter 13 case despite the discharge of his personal liability on the mortgage in his prior Chapter 7 case, so long as he and his plan can satisfy the requirements of 11 U.S.C. § 1325, to be more persuasive. It is clear that the Bankruptcy Code contemplates dealing with nonrecourse mortgages and other nonrecourse liens against the debtor's property in reorganization cases. See, e.g. 11 U.S.C. § 1111(b). Nothing in Chapter 13 indicates any Congressional intention to prohibit the Chapter 13 plan from dealing with nonrecourse liens on the debtor's home or on any other collateral. Indeed, 11 U.S.C. § 102(2), which applies in Chapter 13 cases by virtue of 11 U.S.C. § 103(a), makes it clear that nonrecourse liens give rise to "claims" that can be dealt with by a Chapter 13 plan so long as the plan satisfies the requirements of 11 U.S.C. § 1325. *See* H.Rep. 595, 95th Cong., 1st Sess. 315

(1978), U.S.Code Cong. & Admin.News 1978, p. 5787.

What is troublesome here, of course, is that Fleet never agreed to make a nonrecourse loan to Ligon. Instead, it clearly bargained for his personal liability on the original loan. The loan only became nonrecourse involuntarily by operation of law when Ligon filed a Chapter 7 petition and received a discharge. Now, Fleet, through no fault of its own, finds itself stuck as an involuntary nonrecourse lender threatened with an involuntary cure and reinstatement of its now nonrecourse loan in Ligon's present Chapter 13 case. It is not hard to see why Fleet is unhappy.

Of course, Ligon and Fleet could have avoided the present dilemma by agreeing to a reaffirmation in the Chapter 7 case in accordance with the requirements of § 524(c) and (d). This would in effect, have allowed the mortgage and Ligon's personal liability thereon to pass through the Chapter 7 case unaffected. Had the parties proceeded in this fashion, which clearly was the method Congress intended to be used in these circumstances, there would be little doubt about Ligon's ability as a matter of law to include Fleet's claim in his present Chapter 13 plan. *McKinstry*, 56 B.R. at 193; *Brown*, 52 B.R. at 7. The problem is that the parties did not reaffirm the debt, and, in any case, even if Ligon had wanted to reaffirm it, Fleet could not have been forced to accept a reaffirmation of the mortgage in the Chapter 7 case against its will. *McKinstry*, 56 B.R. at 193.

Thus, to a certain extent Fleet's nonrecourse lien claim against the debtor's home results from operation of law rather than by consent. However, even if Fleet's lien claim is viewed as a nonconsensual lien claim, § 102(2) is not limited to consensual nonrecourse lien claims. It refers to any claim against the debtor's property in its definition of claims against the debtor. It is not limited to nonrecourse security interests. *See also* 11 U.S.C. § 1111(b); *compare* 11 U.S.C. § 101(45). Accordingly, regardless of whether Fleet's lien is regarded as consensual or nonconsensual, it is still a

"claim" for purposes of the Bankruptcy Code which can be affected by a Chapter 13 plan.[6]

In determining the definition of "claim" for purposes of the Bankruptcy Code, 11 U.S.C. § 101(4) and § 102(2) must, of course, be read together. There can be little doubt that under § 102(2) "claim" includes nonrecourse liens. Section 1111(b) starts from the premise that nonrecourse liens are claims. There is no difference between what is a claim in a Chapter 11 case and what is a claim in a Chapter 13 case. In fact, even 11 U.S.C. § 101(4)(B) can be read to include Fleet's post Chapter 7 rights within the definition of "claim." Arguably, if Ligon breaches, i.e. fails to make mortgage payments, Fleet has a right to the equitable remedy of foreclosure. *See* Lewis 63 B.R. at 93, n. 2. Fleet has a right to payment resulting from the failure to make mortgage payments. Its right is to be paid from the proceeds of the foreclosure sale. Nothing in 11 U.S.C. in § 101(4)(A) or (B) requires a right to payment from the debtor personally. The fact that the payment comes from the debtor's property as opposed to the debtor personally would seem to be irrelevant, a conclusion reinforced by 11 U.S.C. § 102(2).

The cases reaching the opposite conclusion seem to ignore or gloss over the existence of 11 U.S.C. § 102(2) and the language of 11 U.S.C. § 101(4) in concluding that Ligon's plan is impermissible as a matter of law. Those cases conclude that the discharge in Chapter 7 extinguishes the debt and the lien that survives is not a debt. *See, e.g., McKinstry*, 56 B.R. at 193; *Cowen*, 29 B.R. at 895. The problem is that regardless of whether the bankruptcy discharge extinguishes the debtor or merely provides a defense to the debt which continues to exist for state law purposes, 11 U.S.C. § 102(2) makes it clear that Fleet's lien after the Chapter 7 discharge is a claim for Bankruptcy Code purposes.

It is also worth noting that the only Court of Appeals case on point concludes that Ligon's plan is not per se impermissible. *Metz*, 820 F.2d 1495 (9th Cir.1987). The *Metz* court concluded that nothing in the Bankruptcy Code prohibits a debtor from using Chapter 13 to reinstate a mortgage after the debtor's personal liability on that mortgage had been discharged in a Chapter 7 case. The Ninth Circuit found that the lien surviving the Chapter 7 case is a "claim" that may be included in a Chapter 13 plan. However, the Ninth Circuit also made it clear that the inquiry does not end with the conclusion that the Bankruptcy Code allows the mortgage to be reinstated despite the Chapter 7 discharge. Instead that is merely the starting point for analysis. The Ninth Circuit in *Metz* made it clear that the bankruptcy court, in determining whether or not to confirm a plan such as that proposed by Ligon, must fully inquire into the circumstances surrounding the filing of the petition and proposal of the plan in order to determine whether the good faith requirement of 11 U.S.C. § 1325(a)(3) is satisfied. While it is true that a decision by the Ninth Circuit is not binding on a bankruptcy court sitting in the Seventh Circuit, it is authority which is entitled to considerable weight. *In re Hubbard*, 23 B.R. 671, 673 (Bankr.S.D. Ohio, W.D.1982).[7]

More importantly, the Seventh Circuit's recent decision in *Matter of Smith*, 848 F.2d 813 (7th Cir.1988), strongly suggests that the Seventh Circuit would agree with

---

6. This matter is before the court on a motion to annul the stay. The debtor's plan is not technically before the court for confirmation. In any case, the plan does not propose anything other than cure Fleet's mortgage and reinstate it. No scale down or the like is proposed. Therefore, the court does not have to reach the question of whether Fleet's lien continues to qualify as a security interest for Bankruptcy Code purposes after the discharge of Ligon's personal liability on that mortgage in the Chapter 7 case. *See* 11 U.S.C. §§ 101(45), 1322(b)(2) and (5).

7. There are no district court decisions on point in this district or circuit. There are two bankruptcy court decisions on point within the Seventh Circuit, *In re Russo*, 94 B.R. 127 (Bankr.N.D.Ill.1988) and *Matter of Hagberg*, 92 B.R. 809 (Bankr.W.D.Wis.1988), which reach opposite conclusions. *Hagberg* would allow Ligon to seek confirmation of his proposed plan. *Russo* would not. This court agrees with the analysis of the definition of claim found in *Hagberg*, rather than that set out in *Russo*.

the *Metz* result. In *Smith,* the Seventh Circuit refused to hold that a debtor's use of Chapter 13 to attempt to discharge a debt which would be nondischargeable in a Chapter 7 case for a relatively small payment was neither per se permissible because the literal language of the statute allowed it, nor per se impermissible because it enabled a debtor to end run Congress's carefully constructed Chapter 7 nondischargeability policies. Instead, the Seventh Circuit held that the fact that the debtor sought to discharge an otherwise nondischargeable debt for little or no payment in Chapter 13 was but one factor to be considered in determining whether the debtor filed the Chapter 13 petition and proposed his plan in good faith. *Smith,* 848 F.2d at 818. *See also* 11 U.S.C. § 1325(a)(3). In *Smith,* the Seventh Circuit instructed the bankruptcy court that faced with a motion to convert a Chapter 13 case to Chapter 7, or to dismiss it on good faith grounds, or to determine whether or not to confirm a Chapter 13 plan, to examine the totality of circumstances surrounding filing of the Chapter 13 petition and the proposal of the Chapter 13 plan.[8]

This Court believes that the Seventh Circuit would follow both *Metz* and *Smith* if confronted by the issue before the court in the instant case.[9] It would not hold that the debtor's discharge of personal liability on the home mortgage in a Chapter 7 case per se permitted or prohibited the debtor's subsequent use of Chapter 13 to force the secured lender to accept a cure and rein-

statement of that mortgage in a Chapter 13 plan. Instead, it is reasonable to conclude that the Seventh Circuit would use the same approach to this problem that it used with the nondischargeable debt problem in *Smith,* i.e., instruct the bankruptcy court in determining whether to lift the stay, convert the case to one under Chapter 7, dismiss the case, or confirm the plan to examine not only the narrow question of whether what Ligon proposes to do is permissible as a matter of law under the Bankruptcy Code, but also the totality of circumstances leading up to the filing of the petition and the proposal of the plan.[10]

As *Smith* indicates, the debtor's good faith in filing his latest Chapter 13 petition and proposing his present Chapter 13 plan will be measured by the application of the five-step test earlier set out by the Seventh Circuit in *In re Rimgale,* 669 F.2d 426, 432 (7th Cir.1982).[11] It is obvious that the crucial question in this case will be whether Ligon has been fundamentally fair in dealing with his creditors. In that regard, the court will have to consider all three of Ligon's bankruptcy cases over the last several years. The court will have to determine, inter alia, why the first Chapter 13 failed, whether the second case could have been a Chapter 13 instead of a Chapter 7, and whether there has been a change of circumstances in Ligon's financial life such that he can now make mortgage payments he never could make before. *Smith,* 848 F.2d at 820; *Metz,* 820 F.2d at 1498; *In re*

---

8. In *Smith* the Seventh Circuit reiterated that there is a distinction between the debtor's good faith in filing a petition and good faith in proposing a plan. *Smith,* 848 F.2d at 820; *See also Matter of Madison Hotel Associates,* 749 F.2d 410, 424–25 (7th Cir.1984).

9. In that regard, it is worth noting that the Seventh Circuit in *Smith* cited the Ninth circuit's *Metz* decision several times with apparent approval. *Smith,* 848 F.2d at 816 n. 2, 818 n. 4 and 820. *Metz* uses a "totality of circumstances" approach to the precise question now before this court. 820 F.2d at 1498.

10. This also assumes, of course, that the Seventh Circuit would conclude as did the Ninth Circuit in *Metz* that the lien which Fleet has against Ligon's home after his Chapter 7 case does give rise to a claim for Bankruptcy Code purposes. As previously indicated in this opinion the Court

believes 11 U.S.C. § 102(2) defining "claim" to include a claim against the debtor's property mandates that result.

11. The *Rimgale* test is as follows:
1. Does the proposed plan state [the debtor's] secured and unsecured debts accurately?
2. Does it state [the debtor's] expenses accurately?
3. Is the percentage of repayment of unsecured claims correct?
4. If there are or have been deficiencies in the plan, do the inaccuracies amount to an attempt to mislead the bankruptcy court?
5. Do the proposed payments indicate "a fundamental fairness in dealing with ones creditors"?
669 F.2d at 432.

*Easley,* 72 B.R. 948 (Bankr.M.D.Tenn. 1987). The court will have to determine whether the use of Chapter 7 and Chapter 13 in tandem was part of an overall plan to escape personal liability on the mortgage or whether the Chapter 7 case and this Chapter 13 case were entirely independent of each other. *Smith,* 848 F.2d at 821; *In re Okoreeh–Baah,* 836 F.2d 1030 (6th Cir. 1988); *Matter of Chaffin,* 836 F.2d 215 (5th Cir.1988). On that point, evidence of Ligon's effort or lack of effort to reaffirm the mortgage in the Chapter 7 case would appear to be particularly relevant.

Obviously, a determination of Ligon's good faith in filing this Chapter 13 petition and in proposing his plan can only be made after an evidentiary hearing. No such hearing has yet been held. The instant motion was submitted to the court as a question of law, i.e., is Ligon prohibited as a matter of law from proposing to cure and reinstate his home mortgage in this Chapter 13 case by virtue of the fact that his personal liability on the mortgage was previously discharged in an earlier Chapter 7 case. Since this court concludes that Ligon's Chapter 13 plan is not prohibited as a matter of law, Fleet's motion to annul the stay must be denied. However, that denial is without prejudice to a renewal of the motion on good faith and other grounds or to any objection to confirmation Fleet may wish to pursue.

## CONCLUSION

IT IS HEREBY ORDERED that instant Fleet's motion to annul the stay is denied.