**In re Edwin Wayne HINES, SSN: 522–48–5659 and Dorothy Lee Hines, SSN: 523–50–5240, Debtors.**

**Bankruptcy No. 86 B 01752 J.**

United States Bankruptcy Court, D. Colorado.

Aug. 22, 1986.

Douglas E. Larson, Grand Junction, Colo., for debtors.

Robert I. Cohen, Pearl & Cohen, Denver, Colo., for General Motors Acceptance Corp.

Susan M. Corle, Williams, Turner & Holmes, P.C., Grand Junction, Colo., for Palisade Nat. Bank.

## ORDER

ROLAND J. BRUMBAUGH, Bankruptcy Judge.

THIS MATTER comes before the Court on Palisade Bank's objection to confirmation of the Debtor's Chapter 13 plan. A hearing was held on the matter on August 1, 1986. This Court recognizes jurisdiction pursuant to 28 U.S.C. § 1334 and § 157.

The Debtor, Edwin Wayne Hines, operates a fruit growing business in Palisade, Colorado. He farms approximately 20 acres, and lives in a farmhouse on that property.

Dr. Richard Renquist, qualified as an expert on fruit bearing trees, examined Mr. Hines' orchards and testified that he estimated this year's yield would be 2,910 boxes of peaches, 250 boxes of apples, 900 boxes of pears, and 25 boxes of plums. He also stated the quality and size of the fruit were good. He pointed out that this year's crop yield will be lower than normal because of spring freezes.

The Debtor testified he expects to receive approximately $50,000.00 in gross profits this year, and believes he will continue to realize about this amount in future years. However, he admitted that the bigger a fruit crop, the more expensive it is to grow and harvest. His 1981–1985 tax returns show gross sales of approximately $16,000–$20,000 each year, with 1981 as the only year in which gross sales exceeded $50,000. The Debtor's plan projects $28,-000 in expenses for 1986, and the Debtor believes this amount will remain constant throughout the pendency of the plan.

The Debtor borrowed $20,000 from Palisade Bank in May, 1985, for the purpose of building a fruit drying facility on his property. The Debtor stated that the facility has been built, but has not yet been put into full operation. He asserted that the fruit dryer allows him to use and sell damaged or substandard fruit, which he would otherwise have to throw away.

Mr. Robert Hoffman, the senior vice president of Palisade Bank, testified that the loan was a commercial loan. He knew the Debtor intended to use the borrowed funds to construct a fruit drying facility and believed the idea was a good one.

The bank objects to the Debtor's Chapter 13 plan on the grounds that it attempts to modify the bank's rights in violation of 11 U.S.C. § 1322(b)(2) by lowering the interest rate from 14.5% to 12%, and by changing the payment schedule provided by the note. The bank also states that the payments set forth in the plan are not sufficient because they do not include accrued interest, use an inaccurate annual payment, and provide for an unreasonable rate of interest. Further, the bank questions the feasibility of the plan, and suggests that the Debtors will be unable to make all of the payments under the plan as required by 11 U.S.C. § 1325(a)(6).

The Debtor contends that modification of the bank's rights is proper, as 11 U.S.C. § 1322(b)(2) does not apply. The Debtor also states that his plan is feasible and his fruit drying operation will produce the supplemental income needed to fund the plan.

The first issue the Court must address is whether the plan impermissibly modifies the rights of the bank. The parties agree,

and the promissory note and the deed of trust indicate, that the security given for the loan consists of approximately 20 acres, together with the dwelling and outbuildings.

11 U.S.C. § 1322(b)(2) provides that a Chapter 13 plan may:

> modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims.

11 U.S.C. § 1322(b)(5) creates an exception to this provision, whereby the plan may:

> notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due.

The bank and the Debtor assert that the case law is divided as to the interpretation of § 1322(b)(2). This is not strictly true. One line of cases holds if the security for a loan is any property which is not the principal residence of the debtor, even though the debtor's residence may form a portion of the security, the secured creditor's rights are subject to modification under § 1322(b)(2). *See, In re Leazier,* 55 B.R. 870 (Bankr.N.D.Ind.1985) (Court held § 1322(b)(2) inapplicable to debtor's 80 acre farm); *In re Morphis,* 30 B.R. 589, 594 (Bankr.N.D.Ala.1983) (Court held § 1322(b)(2) applies to long-term debt, not short-term financing). Another line of cases stands for the proposition that § 1322(b)(2) should not be construed to permit modification of the rights of any secured creditor who does not hold a purchase-money mortgage on the debtor's principal residence. *See, In re Bradshaw,* 56 B.R. 742 (S.D.Ohio 1985) (Court held that a plan could not modify the rights of a creditor holding a second mortgage on the debtor's home); *In re Coffey,* 52 B.R. 54 (Bankr.N.H.1985) (Court stated § 1322(b)(2)

should not be read to contain a limitation referring to purchase money mortgages). These two lines of cases do not conflict directly. One line recognizes that any loan secured by property which includes the debtor's principal residence and other additional property falls outside the limitation of § 1322(b)(2). The second line of cases points out that § 1322(b)(2) contains no language restricting its application to purchase money mortgages. The two lines address two separate issues, the type of security and the type of loan.

■ There is extensive discussion surrounding the issue of the types of loans intended to be subject to the modification prohibition of § 1322(b)(2). However, this issue is not relevant to the case at bar, because the creditor here cannot claim exemption from modification of its rights because it holds security which includes property in addition to the Debtor's principal residence, namely, the remainder of the Debtor's farm.

The statutory language gives a clear description of the type of security interest to which the restriction applies. The claim must be "secured only by a security interest in real property that is the debtor's principal residence." 11 U.S.C. § 1322(b). The editors of *Colliers* explain:

> A claim secured by any other real property or by personal property of the estate or of the debtor or by the property of another may be modified by the Chapter 13 plan. Creditors sometimes demand real property and personal property to secure the same debt. Such a claim may be modified by a Chapter 13 plan. And a claim secured by a lien other than a security interest, on real estate that is the debtor's principal residence, may also be modified by a Chapter 13 plan.

5 Collier on Bankruptcy (15th ed. 1986) ¶ 1322.01. In *In re Glenn,* 760 F.2d 1428, 1433 (6th Cir.1985), citing legislative history, the Court noted that Congress wished to make the alternative of Chapter 13 attractive to debtors, but was concerned about bankruptcy's effects on the home market. It therefore rejected the original

statutory language, which forbade modification of the rights of all creditors whose debts were secured by real property. Instead, "[n]o preferential treatment was given debts secured by property in addition to the Debtor's principal residence." *Id.* at 1434. · Similarly, the court in *In re Leazier, supra* found that a creditor with a security interest in a farm holds far more than a security interest in the Debtor's residence. The *Leazier* court stated:

> Section 1322(b)(2) does not prevent farmers who qualify for Chapter 13 relief from modifying the rights of creditors who hold security interests in their farm land. Small farmers should not be forced to convert to Chapter 11 for the sole reason that their home occupies an acre of their farm.

*Id.* at 871.

In the instant case, therefore, the prohibition against modification does not apply, and the Debtor's plan cannot be denied confirmation on that basis. The Court must now determine whether confirmation should be denied on the grounds of unreasonableness or infeasibility.

■ The only evidence before the Court as to the reasonableness of the 12% interest rate assigned to the Palisade Bank loan by the plan is the statement by Albert Hoffman, senior vice president of the bank, that he believed 14%–16% to be reasonable interest on a second mortgage. He agreed that 12% is a reasonable rate on a first mortgage. However, he admitted that the subject transaction was not really a mortgage loan, but rather a commercial loan due in two and one-half years, and that long term loans are generally more risky than short term loans. This evidence is inconclusive at best, and, in view of the fact that the Debtors are permitted to modify this secured creditor's rights, and the fact that this transaction is a short-term loan for a commercial purpose, the Court finds that a 12% interest rate is not unreasonable.

The Court received no evidence at hearing as to the correctness of the calculations amortizing $20,000 over four years. The bank's objection states that the amortization of $20,000 over four years requires an annual payment of $6,548.69, not $5,879.18 as called for by the Chapter 13 plan. The Debtor's motion to confirm lists an annual payment to the bank of $5,879.18. The plan, however, provides only that the bank shall be paid a total of $23,516.74 if it accepts the plan, and $250,000 if it rejects the plan. (The Court assumes that this second amount was intended to be $25,000.) The Court's own calculation of the correct annual payment is $6,584.69. Faced with this confusing and conflicting evidence, the Court must direct that the plan and the motion to confirm be amended to reflect the correct amortization figure, whatever that may be.

■ With respect to the plan's feasibility, the Court heard two forms of evidence. The first was from Dr. Renquist, who presented testimony as to the condition of the Debtor's orchards. The second was from the bank's introduction of the Debtor's tax returns for the past five years, showing profits of less than the $50,000 projected by the Debtor.

While historical evidence can constitute valuable indicator of the probability of future events, no one can predict the future with absolute accuracy. The evidence shows that the Debtor's operation is healthy and well-maintained, and even the bank's vice president agrees that the fruit drying facility could operate successfully. The intent of the Bankruptcy Code is to afford a debtor a chance to rehabilitate. The evidence here demonstrates the Debtor's good faith and a reasonable possibility that the plan payments can be made, so confirmation will not be denied for lack of feasibility. It is, therefore,

ORDERED that the objection to confirmation of Palisade Bank is denied. However, it is further ordered that confirmation of the Debtor's plan will be held in abeyance pending the amendment of the plan and the motion to confirm to reflect the correct figures for amortization of the $20,000 loan at 12% interest over four years,

and the correct amount that the bank will be paid upon rejection of the plan. Each party will bear its own costs as to this objection.