**In re Farren L. (Lee) ROBERTSON dba High Grade Timber Co., Debtor.**

**Bankruptcy No. 2–87–04506.**

United States Bankruptcy Court, S.D. Ohio, E.D.

March 4, 1988.

Frank M. Pees, Worthington, Ohio, trustee.

Mitchel D. Cohen, Columbus, Ohio, for debtor.

Joseph C. Winner, Columbus, Ohio, for John Deere Co.

## OPINION AND ORDER ON OBJECTION TO CONFIRMATION

DONALD E. CALHOUN, Jr.,
Bankruptcy Judge.

This matter is before the Court on the objection of John Deere Company ("John Deere") to the confirmation of the debtor's Chapter 13 plan. A hearing on this objection was held January 21, 1988, following which the Court took this matter under advisement.

The Court has jurisdiction in this matter pursuant to 28 U.S.C. § 1334(b) and the General Order of Reference entered in this District. This is a core proceeding arising under 28 U.S.C. § 157(b)(2)(L).

The debtor filed his Chapter 13 petition on October 28, 1987 as Farren L. (Lee) Robertson, doing business as High Grade Timber Company ("High Grade"). High Grade is a partnership, and the debtor is one of its partners. The debtor included in his Chapter 13 statement an obligation to John Deere in the approximate amount of $159,613.00. That obligation is secured by various logging equipment purchased by the debtor in September, 1986 and used by him in the partnership. He indicated, at the time of filing, that he had one unsecured debt of $2,500.00 arising from a student loan. On January 15, 1988, the debtor amended his schedules to list a $100,000.00 debt, that the debtor considers a contingent debt of the partnership.

The debtor's Chapter 13 statement indicates that his gross income for the last calendar year was $66,000.00. His statement also indicates that in December of 1986, he donated $33,333.00 to a church organization known as Zoe Ministries ("Zoe"). The debtor's uncle, Don Dillon, and Mr. Dillon's wife, are the principals of Zoe. Mr. Dillon is also a partner in High Grade.

A short time prior to filing this Chapter 13 petition, the debtor entered into an agreement, whereby the debtor agreed to allow High Grade to use his logging equipment in exchange for High Grade paying the debtor $1,550.00 per week. Under the agreement, High Grade was to be responsible for costs related to insurance, repairs, maintenance, diesel, oil and gas, operators, taxes, and transportation. The debtor's plan proposes to pay the trustee $5,000.00 per month for a period of 45 months. This plan is based on a total debt of $169,114.00. That amount includes the secured debt to John Deere of $159,613.00, a priority claim of $7,000.00 for state and federal taxes, and an unsecured student loan of $2,500.00. The debtor contends that the other unsecured debt of $100,000.00 is to be paid by the partnership. All creditors are to be paid in full under the proposed plan.

John Deere objects to the debtor's plan for a number of reasons. First, John Deere contends that the debtor does not qualify as a debtor under 11 U.S.C. § 109. Under this section of the Code, John Deere contends that the debtor is not able to show that his income is sufficiently stable and regular, that debtor's plan, as filed, is actually a disguised filing for the partnership, and that the debtor's unsecured debts exceed the statutory limit. John Deere objects also on the grounds that under Chapter 13 of Title 11, the plan is not proposed in good faith, is not feasible, and proposes to pay creditors over a period exceeding 36

months in contravention of 11 U.S.C. § 1322(c).

### I. *Sufficiently Stable and Regular Income*

The debtor's partner, Mr. Dillon, testified that in 1986, High Grade suffered a loss in the approximate amount of $308,000 due to the spoilation of timber and inattentiveness to the business resulting from a family tragedy. He further testified that, despite this loss, the prospects for success of High Grade are good in light of a recent contract to lumber a large tract of timber. He testified that the proceeds from this and other logging operations would be sufficient to make the payments required under the agreement for use of the debtor's equipment which payments would then be used to fund the Chapter 13 plan.

■ The phrase "regular income" under 11 U.S.C. § 109(e) is to be interpreted liberally so as to include sources of income other than just wages. *In re Campbell,* 38 B.R. 193 (Bankr.E.D.N.Y.1984); *In re Wilhelm,* 6 B.R. 905 (Bankr.E.D.N.Y.1980). In the case of *In re Tucker,* 34 B.R. 257, 262 (Bankr.W.D.Okla.1983), the Court added that:

> Our determination of what constitutes "regular income" is not limited to the date of filing the petition, but may be viewed prospectively. *In re Troyer,* 24 B.R. 727 (Bankr.N.D.Ohio 1982). Thus, our concern becomes not one of simply fluctuations of income, but whether there will be any reliable income to fund the plan.

■ In the instant case, the Court cannot conclude that the debtor does not have sufficiently stable and regular income to fund the Chapter 13 plan. His testimony, and the agreement for use of the equipment by High Grade, indicate that he is to receive $1,550.00 per week. Moreover, his testimony, as well as that of Mr. Dillon's, demonstrates that High Grade is an on-going business that has secured a potentially lucrative contract for the farming of timber. On the basis of this evidence, the Court finds that the debtor has sufficiently stable and regular income.

### II. *Nature of the Petition*

■ John Deere argues that the debtor's plan is actually filed as a plan for the partnership, and therefore the debtor is ineligible for relief. John Deere states that the debtor's plan is designed to procure the benefits of Chapter 13 for the partnership, as opposed to the debtor, in contravention of 11 U.S.C. § 109(e). In support of its argument, John Deere contends that the agreement between the debtor and High Grade, and the testimony of Mr. Dillon, demonstrate that the John Deere equipment is considered an asset of the partnership. Mr. Dillon testified that the equipment would become property of the partnership when the note was paid in full. The debtor testified that the equipment was not property of the partnership, but belonged to him. He also testified that the agreement for use of the equipment executed between himself and High Grade was made in contemplation of filing under Chapter 13, and was made so as to formalize the terms for High Grade's use of the equipment, which had been occurring for several months prior to the execution of the agreement.

The debtor further testified that if he wanted to, he could take his equipment and use it elsewhere and apart from the partnership. Yet, clearly, under the agreement with High Grade the debtor has parted with a degree of ownership in the equipment, and would be answerable to the partnership under that agreement if he unilaterally removed the equipment. The agreement and testimony demonstrate that High Grade has made payments to John Deere on the equipment, though channeled through the debtor, and that High Grade intends to continue making payments in this fashion until the note is paid in full. At that time, the equipment is to become property of High Grade. In the interim, the Court notes that the debtor, by contributing the equipment to the partnership, and the partnership by contributing to the costs of that equipment, could not unilaterally remove the equipment from the partnership without an accounting to it. In other

words, the partnership presently has an equitable and financial interest in the equipment to the extent of its contribution to its costs, and by the fact that the debtor contributed that equipment to the partnership.

In the case of *In re Fisk*, 36 B.R. 924 (Bankr.W.D.Mich.1984), the Court observed that:

It is a fundamental principle of bankruptcy law that a partnership entity cannot file for relief under Chapter 13 which under 11 U.S.C. § 109(e) is limited to an individual with regular income. *See In re Tegtmeyer*, 31 B.R. 555, 8 C.B.C.2d 1372, 1376 (Bankr.S.D.Ohio 1983); *In re Krokos*, 12 B.R. 520 (Bankr.S.D.N.Y. 1981). *As a corollary to this principle, partnership assets may not be administered in an individual partner's Chapter 13 case.* [Citations omitted; Emphasis added].

In the instant case, the Court finds that the equipment is an asset of the partnership. The evidence and testimony clearly indicate that the debtor's intent when he purchased the equipment was to use that equipment in the partnership. His intent, as well as the partnership's contribution to the costs of the equipment demonstrates that it is an asset of the partnership. Ohio Rev.Code § 1775.07(B). That asset cannot be administered through the debtor's individual Chapter 13 plan. 11 U.S.C. § 109(e); *Fisk, supra; See also Matter of Monaco,* 36 B.R. 882 (Bankr.M.D.Fla.1983). For this reason, confirmation of the debtor's plan must be denied.

### III. *Unsecured Debt Limitations*

On January 15, 1988, the debtor amended his debt schedules to include a debt of $100,000.00 to a Wallace Gallier. That amendment indicates that the basis for the debt is a loan from Gallier to the High Grade partnership, and which is to be paid by the partnership. The amendment classifies the debt as contingent. John Deere objects to confirmation on the basis that as the debtor's amended unsecured debt is $100,000.00, he does not qualify for relief under 11 U.S.C. § 109(e), which states:

(e) Only an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated, secured debts of less than $350,000, or an individual with regular income and such individual's spouse, except a stockbroker or a commodity broker, that owe, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts that aggregate less than $100,000 and noncontingent, liquidated, secured debts of less than $350,000 may be a debtor under chapter 13 of this title.

The concern of the Court is with the total amount of unsecured debt at the time of filing. *Comprehensive Accounting Corp. v. Pearson (Matter of Pearson )*, 773 F.2d 751 (6th Cir.1985). The court, in *Pearson* at page 756, adopted the view:

[T]hat a court should rely primarily upon the debtor's schedules checking only to see if the schedules were made in good faith on the theory that section 109(e) considers debts as they exist at the time of filing, not after a hearing.

In accordance with the Sixth Circuit's conclusion in *Pearson,* the Court holds that the debtor's petition, at the time it was filed, did not exceed the statutory limit imposed for unsecured debt under 11 U.S. C. § 109(e).

### IV. *Good Faith*

John Deere argues that the debtor's Chapter 13 plan is not proposed in good faith as required under 11 U.S.C. § 1325(a)(3). In discussing the concept of good faith, the Sixth Circuit has observed that:

The "good faith" requirement is neither defined in the Bankruptcy Code nor discussed in the legislative history. The phrase should, therefore, be interpreted in light of the structure and general purpose of Chapter 13. Obviously the liberal provisions of the new Chapter 13 are subject to abuse, and courts must look closely at the debtor's conduct before confirming a plan.

*Memphis Bank & Trust Co. v. Whitman,* 692 F.2d 427, 431–432 (6th Cir.1982). The court went on to hold at page 432 that:

The view that the Bankruptcy Court should not consider the debtors pre-plan conduct in incurring the debt appears to give too narrow an interpretation to the good faith requirement. *See, e.g., Matter of Kull*, 12 B.R. 654, 659 (S.D.Ga. 1981) (among the facts a court should consider to determine whether a debtor has acted in good faith are "the circumstances under which the debtor contracted his debts and his demonstrated bona fides, or lack of same in dealing with his creditors.")

The Sixth Circuit recently interpreted the court's holding in *Memphis* to mean that conduct by the debtor prior to filing a Chapter 13 petition is "but one element in the debtor's total circumstances" that should be considered in reaching a determination as to whether a plan under Chapter 13 has been proposed in good faith, adding that the "good faith calculus requires the use of discretion by the bankruptcy judge." *Metro Employees Credit Union v. Okoreeh–Baah (In re Okoreeh-Baah)*, 836 F.2d 1030 (6th Cir.1988). The Court in *Metro* went on to hold that:

> Good faith is an amorphous notion, largely defined by factual inquiry. In a good faith analysis, the infinite variety of factors facing any particular debtor must be weighed carefully. We cannot here promulgate any precise formulae or measurements to be deployed in a mechanical good faith equation. The bankruptcy court must ultimately determine whether the debtor's plan, given his or her individual circumstances, satisfies the purposes undergirding Chapter 13: a sincerely-intended repayment of pre-petition debt consistent with the debtor's available resources. The decision should be left simply to the bankruptcy court's common sense and judgment.

Accordingly, we hold that *Memphis* did not establish a *per se* rule, and that courts should take into account the totality of the circumstances confronting a debtor, not simply his or her pre-plan conduct, when deciding whether or not to confirm a Chapter 13 plan.

The Court notes several factors in the instant case that impact on the determination of good faith. In the year prior to filing, the debtor, while falling behind in his payments to John Deere, contributed approximately $33,333.00 to Zoe Ministries. Don Dillon, the debtor's uncle, and a partner in High Grade, is one of the principals of Zoe. He is the managing officer of High Grade and is responsible for handling the partnership's finances. It is apparent from the record that Mr. Dillon also exerts a great deal of financial control over that portion of the debtor's investment in the partnership, and his return from that investment, which control includes the ability to divert the debtor's one-third interest in proceeds from a $100,000.00 loan made to the partnership from the partnership to Zoe to the debtor's detriment and to the detriment of his creditors.

The Court also notes that in the year prior to filing his petition, the debtor made a personal loan to a friend for $1,000.00. The last payment the debtor made to John Deere was in June, 1987.

The Court cannot conclude that the debtor's plan has been proposed in good faith. First, as noted previously, the equipment is an asset of the partnership, and partnership assets cannot be administered through the debtor's individual Chapter 13 plan. Second, the Court cannot find good faith in the debtor's proposed plan given the fact that he has permitted Mr. Dillon to divert a substantial amount of the debtor's income from the partnership to Zoe, to the detriment of the debtor's creditors. If the debtor's proposed plan were confirmed, payments under the plan would be subject, not to the debtor's sincerity and intent, but to Mr. Dillon's discretion. The Court does not have the ability to exert control over Mr. Dillon to the extent necessary to prevent his mismanagement or diversion of the debtor's share of partnership income from occurring again. For those reasons, the Court is of the opinion that the debtor's plan has not been proposed in good faith.

### V. *Feasibility.*

■ John Deere objects to the debtor's proposed plan on he basis that the plan is

not feasible as required under 11 U.S.C. § 1325(a)(6). This section of the Bankruptcy Code states:

(a) Except as provided in subsection (b), the court shall confirm a plan if—

(6) the debtor will be able to make all payments under the plan and to comply with the plan.

John Deere argues that the debtor's ability to make payments under the plan is dependent upon High Grade's financial performance in the future. In this regard, John Deere argues that High Grade's past financial problems, together with a lack of evidence as to its future performance, renders suspect the debtor's ability to make the payments required under the plan.

The debtor's plan proposes to pay $5,000.00 per month over a period of 45 months. John Deere, and other creditors, are to be paid in full at the end of the plan. The debtor's source of income to fund the plan is from the $1,550.00 per week payments from High Grade for its use of the logging equipment. The debtor testified that High Grade is presently operating, and has entered into a contract to lumber a large tract of land. The revenue from that contract, as well as other contracts, will be used in part to fund the Chapter 13 plan.

The debtor's inability to make timely payments is the reason he has sought relief from the Bankruptcy Court. The court in the case of *In re Hines*, 64 B.R. 684 (Bankr.D.Colo.1986), in addressing an objection to confirmation of a Chapter 13 plan based on feasibility for reasons similar to those advanced in this case by John Deere, observed at page 687 that:

While historical evidence can constitute a valuable indicator of the probability of future events, no one can predict the future with absolute certainty.

Noting that the debtor's business was "healthy and well-maintained", the court in *Hines* went on to hold that as the intent of the Bankruptcy Code is to permit the debtor an opportunity to rehabilitate, a showing of "a reasonable possibility that the plan payments can be made" is all that is required in order to find that the plan is feasible. The evidence in the instant case shows that High Grade is an on-going business, and that the equipment is in good condition and is well-maintained. The testimony of the debtor and of Mr. Dillon is that plan payments can be made from revenue generated from logging operations of the partnership. The Court, therefore, cannot find that the plan proposed by the debtor is not feasible.

## VI. *Duration of Plan in Excess of 36 Months*

■ John Deere's final objection is that the proposed debtor's plan violates 11 U.S.C. § 1322(c) because it proposes to repay creditors over a period in excess of 36 months. 11 U.S.C. § 1322(c) states that:

(c) The plan may not provide for payments over a period that is longer than three years, unless the court, for cause, approves a longer period, but the court may not approve a period that is longer than five years.

Thus, for a plan to extend beyond 36 months, the debtor must show cause for the extension. In this case, the debtor's plan proposes to pay his creditors, both secured and unsecured, over a period of 45 months. He proposed to pay an unsecured debt arising from a student loan at a 100% dividend.

Judge R. Guy Cole of this District recently addressed the issue of what constitutes "cause" under 11 U.S.C. § 1322(c) so as to permit a Chapter 13 plan to exceed three years. *Owens v. Mahr (In re Pierce )*, 82 B.R. 874 (Bankr.S.D.Ohio 1987). In *Pierce*, Judge Cole observed at page 16 that a determination of cause is a matter of judicial discretion, to be decided upon the particular facts of each case.

In the instant case, the Court finds that the debtor's desire to pay his unsecured creditors a 100% dividend as well as his intent to pay his secured creditors in full under the plan, constitutes cause to permit his proposed plan to extend beyond three years. *Pierce, supra.*

## VII. *Conclusion*

On the basis of the foregoing findings of fact and conclusions of law, the objections

of John Deere are SUSTAINED in part, and OVERRULED in part. Accordingly, confirmation of the debtor's proposed plan is DENIED.

IT IS SO ORDERED.