**In re Betty J. FISCHEL, Debtor.**

**Bankruptcy No. 88–00845.**

United States Bankruptcy Court,
N.D. New York.

April 7, 1989.

James F. Selbach, Syracuse, N.Y., for debtor.

Warren V. Blasland, Syracuse, N.Y., trustee.

## MEMORANDUM–DECISION, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

STEPHEN D. GERLING, Bankruptcy Judge.

This contested matter comes before the Court on the Trustee's objection to the confirmation of Betty J. Fischel's ("Debtor") proposed plan pursuant to § 1325(b) of the Bankruptcy Code, 11 U.S.C.A. §§ 101–1330 (West Supp.1979 & Supp.1988) ("Code").

## JURISDICTIONAL STATEMENT

The Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C.A. §§ 157(a) and 1334(b) (West Supp. 1988). This core proceeding, 28 U.S.C.A. § 157(b)(1), (2)(A, B, L and O), is governed by Bankruptcy Rules ("Bankr.R.") 3020(b), 7052 and 9014, 9017.

## FACTS

On May 31, 1988, the Debtor, a resident of Altmar, New York, filed a voluntary petition for relief under Chapter 13 of Code, listing assets and liabilities of $38,-400.00 and $44,231.88, respectively. She indicated one claim held by GMAC in the amount of $16,275.93 and secured by a 1987 Chevrolet pick-up truck and the balance of her indebtedness as non-priority and unsecured. Among the twenty-two unsecured claims the Debtor listed, three were held by the Merchants National Bank and Trust Company ("Merchants") in an aggregate amount of $3,736.64, establishing it as the creditor holding the largest unsecured debt. The bar date for filing proof of claims was October 11, 1988.

According to her Chapter 13 Statement, the Debtor has worked since 1986 for Arrow Communication Laboratories, Inc. of Syracuse, New York as a tuner. In her Schedule of Current Income and Current Expenditures, she listed a monthly net income of $1,380.00, which was the sum of her own monthly take-home pay of $620.00 and the monthly take-home pay of one Richard Howell ("Howell") in the amount of $760.00. The Debtor indicated monthly expenditures of $905.00, including "Merchants loan of Richard Howell—$260."

The Debtor proposed a sixty-month plan consisting of monthly payments of $475.00 to the Trustee, which was characterized as a forty-one percent dividend to all creditors holding allowed unsecured claims after a treatment of GMAC of "$8,800.00 at 6% for 60 months."

In addition to filing three separate proofs of claims on July 1, and July 27, 1988 totalling $3,331.10 relating to unpaid bal-

ances on a credit card account and an unsecured loan made to the Debtor on March 24, 1986, Merchants filed a proof of claim on July 27, 1988 in the amount of $4,107.08 based upon the Debtor's status as "Co-Borrower re money loaned", reciting a security interest in a 1975 Harley Davidson motorcycle, I.D. # 2A33374H5. The claim attached copies of 1) an Instalment Loan Note dated October 13, 1987, signed by the Debtor and Howell on lines identified as borrower 2 and borrower 1, respectively, and indicating a security interest in a 1983 Harley Davidson motorcycle with I.D. # 1HD1CAH18DY112730, 2) a Security Agreement dated January 22, 1988 signed by the same as owners, referencing a 1975 Harley Davidson motorcycle I.D. # 2A33374H5, and 3) a Financing Statement with notice of a lien on the 1975 motorcycle owned by the Debtor, recorded on October 3, 1985.

The Trustee communicated his objection to Debtor's counsel on Howell's continued payment of the Merchants' loan outside of rather than through the plan since title to the 1983 Harley Davidson motorcycle was in the Debtor's name and she was a co-borrower. *See* Letter from Warren V. Blasland, Esq. to James F. Selbach, Esq. (July 27, 1988). He stated that if the payments to Merchants were made in the plan "it may well be that the trustee will be able to pay a lesser amount to the secured creditor and thus the balance will be paid to unsecured creditors, possibly raising the dividend to a 100% from the proposed 72%." *Id.*[1] The Trustee also asserted that the dividend to the unsecureds would be further increased because upon the satisfaction of the Merchants' loan the money would go to the creditors under the sixty-month plan rather than to Howell. *See id.* Additionally, the Trustee claimed that Howell should be treated as the Debtor's spouse since he had voluntarily chosen to place his income into the plan and the two appeared to be living together. *See id.*

This concern became a formal objection to plan confirmation upon the Court's receipt of the letter on July 29, 1988.

**1.** This percentage appears to be based upon the aggregate amount of the proofs of claims filed

as of July 27, 1988, some two and one-half months prior to the claims bar date.

Confirmation of the Debtor's plan was set down for hearing on August 2, 1988, and then adjourned until August 16, 1988 to provide the parties an opportunity to reach a settlement. On August 16, 1988, the Court determined that an evidentiary hearing was necessary. An adjourned evidentiary hearing was held on November 21, 1988 in Utica, New York.

At this evidentiary hearing, the Trustee offered as witnesses Robert Rickert ("Rickert"), Merchants' collections supervisor, the Debtor and Howell. He had admitted into evidence the Instalment Loan Note, dated October 13, 1987, for account number 511–5062095, Exhibit 1, and an affidavit sworn to by Rickert on October 28, 1988, Exhibit 2, and the Debtor successfully moved into evidence, with no objection, the security agreement dated January 22, 1988, identified as Exhibit A.

The following facts were established:

1. Howell applied for a loan from Merchants in October 1987.

2. The purpose of this loan was to consolidate three earlier loans Merchants had made to Howell and for an additional $1,000.00.

3. The Debtor and Howell executed an installment note agreement on October 13, 1987 with Merchants, in which she was identified as borrower 2 and he as borrower 1 and signed in those capacities. *Trustee's Exhibit 1*, para. 20.

4. The Debtor co-signed this "consolidation" loan as she had on two of the previous three loan transactions Howell had made with Merchants since his credit was not sufficient. *Trustee's Exhibit 2.*

5. Merchants approved a loan for account number 511–5062095 in the principal amount of $5,206.85, which after a finance charge of fourteen per cent interest, came to $6,436.08 to be paid in thirty-six monthly installments of $178.78 commencing November 25, 1987. *Id.*

6. The Debtor did not personally receive any proceeds from this consolidation loan.

7. The note indicated a security interest in a 1983 Harley Davidson motorcycle, identification number # 1HD1CAH18DY-112730. *Id.*

8. On January 22, 1988, the Debtor and Howell signed, as owners, a security agreement for account number 511–5062095 setting forth a 1975 Harley Davidson motorcycle, I.D. # 2A33374 H5 as the collateral securing the loan. *Debtor's Exhibit A.*

9. Howell testified that he owned a 1983 Harley in October 1985 and then sold it and had been contacted by Merchants to correct the collateral error.

10. The Instalment Loan Note did not distinguish between guarantor and borrower, treating both as unconditionally guaranteeing payment of the loan if any amount became overdue. *Trustee's Exhibit 1* at para. 32.

11. Said agreement differentiated between an "owner who is not borrower or guarantor" in not requiring from the owner any payment for amounts due under the note. *Id.* at para. 33.

12. While acknowledging the Debtor's status as owner of the motorcycle for insurance purposes, Merchants considered her outside the scope of paragraph 33 of the installment loan note agreement in that she was a co-maker "for accommodation purposes only" and not a co-borrower. *Trustee's Exhibit 2.*

13. Rickert perceived no difference between a co-maker, co-borrower or guarantor in the collection area because all three are obligated to pay if the underlying debt was not paid.

14. While not required to give the Debtor notice of a default by Howell under paragraph thirty-four of the installment note agreement, Rickert stated that Merchants would give her notice.

15. Merchants uses the same credit application for all loans.

16. The Debtor understood her signing the loan as borrower # 2 to mean that she would have to pay the loan if Howell did not and that she had no liability if he was current on the payments.

17. Merchants had never contacted the Debtor so she assumed Howell was current.

18. The Debtor neither possesses a motorcycle license or drives the motorcycle, which Howell maintains and fuels.

19. The Debtor held title to the Harley Davidson for insurance purposes because Howell was unable to get insurance in his own name and she paid the insurance premiums with money he gave to her.

20. The Debtor and Howell share the same address.

21. The Debtor and Howell pool their income.

22. The Debtor testified that "everything was in her name."

23. Howell gives the Debtor his paycheck after paying the Merchants' loan and credit card charges.

24. Howell has never defaulted on the Merchants loan.

## ARGUMENTS

In support of her position that her plan need not include the payments to Merchants, the Debtor maintains that she signed the installment note to enable the bank to make the loan to Howell and was only liable until a payment became overdue. *See* Letter from James F. Selbach, Esq. to Hon. Stephen D. Gerling (August 3, 1988). *See also* Letter from Louis Levine, Esq. to James F. Selbach, Esq. (Sept. 7, 1988) (expressing Merchants' agreement).

The Trustee contends that the Debtor is a co-borrower and not a guarantor, pointing to the filing of a proof of claim by Merchants, the Debtor's signature in paragraph twenty above the line entitled borrower 2, and not above those lines identified as guarantor or owner, and the installment note's provision at paragraph thirty-four that no notice of default for non-payment would be issued. *See* Letter from Warren V. Blasland, Esq. to Honorable Stephen D. Gerling (August 4, 1988). He also stated that his proposal to exclude the note payments from the plan upon a 100 per cent distribution to the unsecured creditors, with Howell's assistance, was rejected. *See id.*

## ISSUES

I. What is the Debtor's liability on the installment loan note?

II. Whether Howell's commitment of his monthly income into the Debtor's proposed plan can be considered as part of her regular income for purposes of Code § 101(29)?

## DISCUSSION

An examination of the installment loan note and a review of the testimony indicates that the Debtor, receiving nothing directly in return, signed the installment note agreement to accommodate Howell by lending her name, credit rating and ownership interest in a motorcycle so that Merchants would make the loan. *See* BLACK'S LAW DICTIONARY 15, 16 (5th ed. 1979). In agreeing to unconditionally guarantee the loan's payments in the event of Howell's nonpayment, she became his surety. 63 N.Y.Jur.2d Guaranty And Suretyship §§ 1, 3, 5 (1987); 74 Am.Jur.2d Suretyship § 1 (1974). The location of the Debtor's two signatures, both below Howell's and on lines identified as borrower 2, does not alter her surety status since it is clear that the parties intended Howell to be the principal obligor on the debt. *Id.* at §§ 17. Moreover, a contract is to be construed strictly in favor of gratuitous surety under the rule of *strictissimi juris*. *Id.* at § 27.

However, because the Debtor's liability was joint and several with Howell, once due, it was a contingent obligation until his default ripened it into a debt. *See Trustee's Exhibit 1* at paras. 31, 32; 63 N.Y.Jur.2d, *supra*, at § 6. *See also Fostvedt v. Dow (In re Fostvedt)*, 823 F.2d 305, 306–07 (9th Cir.1987) *citing Brockenbrough v. Comm'r*, 61 B.R. 685, 686 (W.D. Va.1986) (quoting *In re All Media Properties, Inc.*, 5 B.R. 126, 133 (Bankr.S.D.Tex. 1980), *aff'd per curiam*, 646 F.2d 193 (5th Cir.1981)); *In re Kaufman*, 93 B.R. 319, 321 (Bankr.S.D.N.Y.1988). Thus, until that event of Howell's nonperformance, the Debtor's liability to Merchants remained secondary. 63 N.Y.Jur.2d, *supra*, at § 1. This is so notwithstanding her explicit waiver of notice, which is generally not

mandatory if, as here, the guaranty is unconditional and covers a sum certain which is payable on a specific and fixed date. 38 Am.Jur.2d Guaranty §§ 103, 105, 106 (1968).

 Because at the time of the commencement of her case Howell was current on the loan and the Debtor's co-borrower liability was contingent, it is not included in the calculation of debt for purposes of Chapter 13 eligibility for an individual with regular income or "an individual with regular income and such individual's spouse." Code § 109(e). See 2 L.P. King COLLIER ON BANKRUPTCY ¶ 109.05 (15th ed. 1989). It thus follows that Merchants is not a creditor by virtue of the installment loan note for purposes of distribution under her Chapter 13 plan so long as the note is current.

However, this conclusion does not end the dispute at bar, for the pooling of income and expenses by the Debtor and Howell, including the Merchants' loan, acknowledges their joint lifestyle and begs the question of the shared nature of their debts. Moreover, the timely filing of the proof of claim by Merchants on the installment loan note belies the bank's apparent preference, as stated by Rickert, to limit the Debtor's relationship to Merchants and Howell on the underlying debt as a liability-free "facilitator", perhaps so as not to disturb the loan's current status. The Court also observes the absence of the Merchants' loan in the Debtor's schedule of debt, where it should have been listed as contingent.[2]

Indeed, the Trustee argues that the Debtor and Howell should be treated as husband and wife since they live together and that their debts should be pooled, as is their income, to alternatively support his demand that the Merchants' debt be ex-

cluded from the plan only upon a guaranteed 100 per cent distribution to the creditors holding unsecured claims. Thus, he raises the issue as to whether or not the Debtor may fund her plan with monthly income from Howell, in addition to her own individual income. Ultimately, the proposed plan's feasibility under Code § 1325(a)(6) is implicated since it is clear that Howell's income forms the cornerstone of the Debtor's proposed plan.

Howell's gratuitous contribution of his monthly net income into the Debtor's plan must be examined in light of § 101(29) which describes the phrase "individual with regular income" as an "individual whose income is sufficiently stable and regular to enable such [an] individual to make payments under a plan under chapter 13 of this title . . ." This definition was intended to broaden the kinds of individuals eligible for relief under Chapter 13. See In re Varian, 91 B.R. 653, 654 (Bankr.D.Conn. 1988) (citing to H.R.REP. NO. 595, 95th Cong., 1st Sess. 311–12 (1977), reprinted in 1978 U.S.CODE CONG & ADMIN NEWS 5963, 6268–69; S.REP. NO. 989, 95th Cong., 2d Sess. 24 (1978), reprinted in 1978 U.S.CODE CONG & ADMIN NEWS 5787, 5810. Such legislation justifies a liberal interpretation of the term "regular income." See In re Varian, supra, 91 B.R. at 654 (citing In re Robertson, 84 B.R. 109, 111 (Bankr.S.D.Ohio 1988) and In re Campbell, 38 B.R. 193, 195 (Bankr.E.D.N.Y.1984)).

 The test for "regular income" is not the type or source of income, but rather its regularity and stability. See In re Varian, supra, 91 B.R. at 654 (citing Campbell, supra, 38 B.R. at 195 quoting In re Cole, 3 B.R. 346, 349 (Bankr.S.D.W.Va.1980)). Thus, courts have held that an individual

---

**2.** Furthermore, the Court acknowledges the Trustee's concern as to Howell's retention of monies that would otherwise go to the unsecureds subsequent to paying off the Merchants' loan, inasmuch as the proposed plan is silent on such a mode of distribution in derogation of Code § 1326(c), but notes that since the Debtor has included said loan as an expense in her schedules, its satisfaction would increase the available disposable income and warrant modi-

fication of the confirmed plan. This leaves aside the separate question, raised by neither party, regarding the permissibility of treating a secured debt as an expense when it does not appear to comply with the "reasonably necessary" standard of Code § 1325(b)(2)(A) and results in a classification markedly different from the only other secured claim, held by GMAC. Code § 1322(a)(3), (b)(1), 1325(a).

with sources of income other than wages is qualified to propose a Chapter 13 plan if "the flow of funds is shown to be sufficiently regular and stable to enable payments to be made under a plan." *In re Varian, supra,* 91 B.R. at 654 (husband's commitment to pay $230.00 a month to trustee to fund plan is found to be "regular income" to debtor wife) citing *Robertson,* 84 B.R. at 111 (debtor's contractual right to over $1,500.00 a week pursuant to equipment lease with ongoing business qualified as stable and regular income for Chapter 13); *Campbell,* 38 B.R. at 195 (where family member is jointly liable on debt, that individual's income found to be sufficiently stable and regular to conditionally confirm plan upon affidavit demonstrating commitment and ability); *In re Mozer,* 1 B.R. 350, 352 (Bankr.D.Colo.1979) (debtor's anticipation of certain income in the future failed to constitute regular income where Debtor received only $4,000.00 in earnings in 1978 and had received no earnings in 1979).

■ In the instant case, Howell's voluntary commitment of his net monthly income of $760.00 to the Debtor's proposed plan demonstrates a willingness to supplement the Debtor's income in her Chapter 13 in continuation of their apparently routine prepetition pooling of income and expenses. This suggests a regularity which comports with a liberal construction of the requirement of *regular income* within the meaning of Code § 101(29). However, the Court finds his contribution, unsupported as it is by any legal obligation, to be too tenuous to satisfy the element of stability. *See, e.g., Cohen v. Werner (In re Cohen),* 13 B.R. 350, 356 (Bankr.E.D.N.Y.1981).

The Debtor and Howell are not related, as were the individuals in *In re Campbell, supra,* nor are they bound by marriage, as in *In re Varian,* and the record is silent on the pre-petition duration of their shared living arrangement. It may be true that their joint liability to Merchants on the note and their mutual reliance on each other provides some indication of the necessity of his continued commitment of income into her plan, at least as far as the near future is concerned, and of his substantial interest in the plan's success. It may also be true

that the Debtor could modify her plan under Code § 1329 or seek a hardship discharge under Code § 1328(b) should Howell cease to contribute his income to her plan.

Nonetheless, absent some affirmative action on Howell's part, such as filing a petition and moving for joint administration with the Debtor, or otherwise legally obligating himself to dedicate a portion of his income for the life of her plan and demonstrating an ability to do so, the Court cannot find his contribution to be sufficiently stable to enable the Debtor to make the sixty payments under the proposed plan. *Cf. In re Campbell, supra,* 38 B.R. at 196. Moreover, the Court recognizes its own jurisdictional inability to compel a non-debtor to commit income and notes that the Debtor is not foreclosed from pursuing other avenues to propose a feasible Chapter 13 plan with regular and stable funds.

Accordingly, the Trustee's objection to confirmation, pursuant to Code § 1325 is sustained.

IT IS HEREBY ORDERED.