In re Robert William **GRESS**, Debtor.

No. 00–30774–13.

United States Bankruptcy Court, D. Montana.

Nov. 20, 2000.

ing unsecured claims. *See First Federal Bank of California v. Weinstein (In re Weinstein),* 227 B.R. 284, 297 (9th Cir. BAP 1998).

Daniel S. Morgan, Dye & Moe, PLLP, Missoula, MT, for debtor.

Robert G. Drummond, Great Falls, MT, Chapter 13 Trustee.

## ORDER

RALPH KIRSCHER, Bankruptcy Judge.

Pending in this Chapter 13 bankruptcy case are the Debtor's motion, filed September 7, 2000, for modification of his confirmed Chapter 13 Plan and the Trustee's objections thereto and motion to dismiss for bad faith[1], filed September 13, 2000. After due notice, hearing on these matters was held at Missoula on October 26, 2000. The Debtor Robert William Gress (hereinafter "Gress" or "Debtor") appeared represented by attorney Daniel S. Morgan ("Morgan"), and testified. The Chapter 13 Trustee Robert G. Drummond appeared. At the close of the Debtor's testimony the Court granted the parties time to file simultaneous briefs, and took both matters under advisement. The Trustee's and Debtor's briefs have been submitted and reviewed by the Court, together with the record and the applicable law. This matter is ready for decision.

At issue is whether the Debtor filed his modified Chapter 13 Plan[2] in bad faith when he omitted his live-in girlfriend's $500 per month income from his Schedule I. For the reasons set forth below, because Debtor's live-in girlfriend was not his spouse and was not shown by the record to be legally obligated or willing to contribute her income to the Debtor or his household, after reviewing the totality of the circumstances the Court denies the Trustee's motion to dismiss, and grants Debtor's motion to modify his confirmed Plan.

## FACTS

Gress was involved in a live-in relationship with a woman named Renee Wood ("Wood"), but they were never legally married. The relationship ended and Wood moved out of Gress's house in June or July, 2000[3]. While living with Gress Wood was not employed, but she received a monthly social security income ("SSI") in the sum of $500. Gress testified that Wood never contributed any of her SSI income to Gress's household expenses or support, except that Gress and Wood together financed the purchase of two motor vehicles in Gress's name, viz: a 1987

---

1. Section 1325(a)(3) of the Bankruptcy Code requires for confirmation of a Chapter 13 Plan that "the plan has been proposed in good faith and not by any means forbidden by law." Section 1329, governing modification of a confirmed plan, applies the requirements of § 1325(a), including good faith.

2. The Trustee alleges bad faith by the Debtor both in filing the modified Plan under § 1325(a)(3), and in filing his Chapter 13 petition.

3. Gress testified that Wood moved out on June 16, 2000, but later testified that she moved out in June or July.

Dodge Raider (the "Raider") which Gress bought for Wood's use and which is security for a loan from Montana Auto Finance; and a 1987 Ford pickup (the "pickup") used by Gress in his employment as a truck driver, which is security for a loan from by Associates Financial Services[4] Company, Inc. ("Associates"). Gress made the installment payments on the Montana Auto Finance loan for the Raider, and Wood made the payments on the Associates loan on the pickup from her SSI income.

Gress filed a voluntary Chapter 13 bankruptcy petition on March 29, 2000, and filed his Schedules and Statements on April 5, 2000. Schedule B lists the Debtor's interest in four motor vehicles and one motorcycle, including the Raider and the pickup[5], and Schedule D lists Associates and Montana Auto Finance as creditors holding claims secured by the pickup and Raider, respectively[6]. · Schedule H lists Wood as codebtor with Gress on the Associates loan. Schedule I lists Gress's monthly income from employment as a truck driver in the sum of $2,100.00, but does not include Wood's SSI income. Schedule J lists Gress's monthly expenses in the sum of $1,952.03, but does not include payments on either the pickup or the Raider[7].

Debtor filed his first Chapter 13 Plan on April 12, 2000, proposing plan payments of $200 per month for 60 months. The Plan treated Montana Auto Finance as having an allowed impaired secured claim in the

sum of $1,200.00. It makes no provision for Associates' claim. Associates and Montana Auto Finance filed their Proofs of Claim on April 21, 2000, and May 26, 2000, respectively. At about the time Woods moved out of Gress's home, the Debtor filed a First Amended Chapter 13 Plan on July 6, 2000. The First Amended Plan reduced Montana Auto Finance's allowed secured claim to $1,050 in accordance with its allowed Proof of Claim No. 6, and lists Associates as an unimpaired secured claim which is not provided for by the plan and receives no payments. When Wood moved out of Gress's house in June or July, she stopped making payments to Associates on the pickup. Her vehicle, the Raider, was left in Gress's yard with a failed engine.

The Trustee filed unrelated objections to confirmation on July 21, 2000. After a confirmation hearing held on August 8, 2000, the Debtor agreed to file an addendum curing the Trustee's objections, and the Trustee consented to confirmation[8]. The Court entered an Order confirming the Debtor's First Amended Plan and addendum on August 14, 2000.

On September 7, 2000, Gress filed his motion and modified Chapter 13 Plan, whereby Gress seeks to remove Montana Auto Finance's secured claim on the Raider from any treatment under the Plan and instead provide for Associates' secured claim as an impaired secured claim under paragraph 2(b). He testified that he needs the pickup to work and for hauling[9].

---

4. Associates filed Proof of Claim No. 2 on April 21, 2000, asserting a claim in the amount of $1,779.94 secured by the 1987 Ford pickup. The attached vehicle registration lists Gress as the sole owner of the Ford pickup, while the attached note and security agreement lists both Gress and Wood as borrowers.

5. Gress claimed the Ford pickup under Montana's motor vehicle exemption statute on Schedule C.

6. Each claim is scheduled in the amount of $1,300.00. However, Montana Auto Finance filed Proof of Claim No. 6 stating its secured claim in the sum of $1,050, and Associates

filed Proof of Claim No. 2, asserting its secured claim in the sum of $1,779.94. Both claims are allowed as filed. F.R.B.P. 3002(f).

7. The Schedule instructions for installment payments on Debtor's Schedule J reads: "In chapter 12 and 13 cases, do not list payments to be included in the plan."

8. The Trustee filed his consent on August 17, 2000.

9. His brief contends he needs the pickup for winter access to his house.

## DISCUSSION

### I. Contentions of the Parties.

The Trustee contends that Gress both filed the instant case in bad faith, and proposed his modified Plan in bad faith by failing to disclose Wood's SSI income on his Schedules. The Trustee argues that Gress failed to "live up to his duties as required under the schedules and F.R.B.P. 1007 and 11 U.S.C. § 521(1)". Gress contends that the Trustee's motion is improper procedure, because dismissal first requires revocation of a confirmed Chapter 13 Plan pursuant to 11 U.S.C. § 1330, and that requires an adversary proceeding under Rule 7001(5). Otherwise, Gress contends the Trustee failed to prove fraud, that Wood's income was minimal and would not have any effect on confirmation after she moved out, and that the proposed modification is proper.

 Turning first to Gress's procedural objection, the Court does not consider the Trustee's motion to dismiss for bad faith improper procedure. *In re Hoppel,* 203 B.R. 730 (Bankr.D.Mont.1997), involved a creditor's motion to revoke confirmation on the grounds the debtors obtained a creditor's consent to confirmation by fraud. 203 B.R. at 731. By contrast the Trustee's motion cites § 1325(a)(3) for lack of good faith, not § 1330. Rule 7001 does not list a proceeding to dismiss for lack of good faith among the proceedings which are adversary proceedings. Thus it is a contested matter brought by motion, F.R.B.P. 9014. Gress's procedural objection is not well taken, and the Court will analyze Gress's good faith under § 1325(a)(3), which applies to modification. § 1329(b)(1).

### II. Dismissal for Bad Faith.

 "To determine if a petition has been filed in bad faith courts are guided by the standards used to evaluate whether a plan has been proposed in bad faith. 11 U.S.C. § 1325(a)(3)". *In re Eisen,* 14 F.3d 469, 470 (9th Cir.1994). In both instances the court must review the "totality of the circumstances". *Id.; In re Leavitt,* 171 F.3d 1219, 1224–25 (9th Cir.1999).

 The Ninth Circuit Court of Appeals addressed dismissal of a Chapter 13 case on the basis of bad faith in:

Although not specifically listed, bad faith is a "cause" for dismissal under § 1307(c). [*In re Eisen,* 14 F.3d 469, 470 (9th Cir.1994)] ("A Chapter 13 petition filed in bad faith may be dismissed 'for cause' pursuant to 11 U.S.C. § 1307(c)."); [*In re Hopkins,* 201 B.R. 993, 995 (D.Nev.1996)] (holding that the debtors' filing of frivolous tax returns with no intention to pay taxes warranted dismissal of a Chapter 13 petition for bad faith). Therefore, it follows that a finding of bad faith based on egregious behavior can justify dismissal with prejudice. [*In re Tomlin,* 105 F.3d 933, 937 (4th Cir.1997)]; [*In re Morimoto,* 171 B.R. 85, 86 (9th Cir. BAP 1994)]; *In re Huerta,* 137 B.R. 356, 374 (Bankr. C.D.Cal.1992). We hold that bad faith is "cause" for a dismissal of a Chapter 13 case with prejudice under § 349(a) and § 1307(c).

\* \* \* \*

Bad faith, as cause for the dismissal of a Chapter 13 petition with prejudice, involves the application of the "totality of the circumstances" test. *Eisen,* 14 F.3d at 470. The bankruptcy court should consider the following factors:

(1) whether the debtor "misrepresented facts in his [petition or] plan, unfairly manipulated the Bankruptcy Code, or otherwise [filed] his Chapter 13 [petition or] plan in an inequitable manner," *id.* (citing *In re Goeb,* 675 F.2d 1386, 1391 (9th Cir.1982));

(2) "the debtor's history of filings and dismissals," *id.* (citing *In re Nash,* 765 F.2d 1410, 1415 (9th Cir.1985));

(3) whether "the debtor only intended to defeat state court litigation," *id.* (cit-

ing *In re Chinichian,* 784 F.2d 1440, 1445–46 (9th Cir.1986)); and

(4) whether egregious behavior is present, *Tomlin,* 105 F.3d at 937; *In re Bradley,* 38 B.R. 425, 432 (Bankr. C.D.Cal.1984).[10]

A finding of bad faith does not require fraudulent intent by the debtor.

> [N]either malice nor actual fraud is required to find a lack of good faith. The bankruptcy judge is not required to have evidence of debtor illwill directed at creditors, or that debtor was affirmatively attempting to violate the law-malfeasance is not a prerequisite to bad faith.

*In re Powers,* 135 B.R. 980, 994 (Bankr. C.D.Cal.1991) (relying on *In re Waldron,* 785 F.2d 936, 941 (11th Cir.1986)).

 The determination of whether a debtor filed a petition or plan in bad faith so as to justify dismissal for cause is left to the sound discretion of the bankruptcy court. *In re Leavitt,* 171 F.3d at 1222–23; *In re Marsch,* 36 F.3d 825, 828 (9th Cir. 1994); *Greatwood v. United States (In re Greatwood),* 194 B.R. 637, 639 (9th Cir. BAP 1996), *aff'd,* 120 F.3d 268 (9th Cir. 1997).

 The same factors govern whether Gress filed his petition or his plans in bad faith. *In re Eisen,* 14 F.3d at 470; *In re Leavitt,* 171 F.3d at 1224. The Trustee contends that the first and fourth factors demonstrate Gress's lack of good faith because of his failure to include Wood's income on his Schedule I. The Court does not agree. Wood is plainly listed as a codebtor on Schedule H, and both vehicles and vehicle loans are listed. In Gress's First Amended Plan Associates is plainly listed as an unimpaired secured creditor. That is because Wood, not Gress, made the payments to Associates until she moved out.

This case boils down to whether a debtor must list the income of a non-debtor with whom the debtor is in a live-in, unmarried relationship, in the debtor's schedules and statements. Based upon the evidence in this case, the Court finds that the totality of circumstances does not show a lack of good faith by Gress.

The Trustee cites cases in which the debtor failed to include a spouse's income on the schedules. *In re Metzger,* 11 Mont. B.R. 199, 208–11 (Bankr.Mont.1992) (nondebtor spouse's income must be included in the disposable income test under 11 U.S.C. § 1325(b)(1)); *In re Carlascio,* 16 Mont.B.R. 429, 434–36 (Bankr.Mont.1998); *In re Rothman,* 204 B.R. 143, 159 (Bankr. E.D.Pa.1996); *Matter of Velis,* 123 B.R. 497, 511–12 (D.N.J.1991). None of these cases, however, requires the inclusion in a debtor's income of the income of a boyfriend or girlfriend. Therefore, the cases discussing the inclusion of a nondebtor spouse's income are inapposite to the facts of the instant case. The record shows Wood and Gress were not married, and the uncontroverted evidence is that she never contributed any of her SSI income to Gress's household expenses. When Wood left, she left behind their affairs, including the Associates loan. Furthermore, even if Wood's income was required to be included while they were living together, by the time of confirmation in August she was gone.

In another context this Court has held that a nondebtor's contributions may be considered for purposes of determining a debtor's eligibility for Chapter 13 as an individual with regular income under 11 U.S.C. § 109(e). *In re Jordan,* 226 B.R. 117, 119–20 (Bankr.Mont.1998). As a general rule gratuitous payments to a debtor do not constitute regular income as defined at § 101(30). *Id.; In re Antoine,* 208 B.R. 17, 19–20 (Bankr.E.D.N.Y.1997); *In re*

---

**10.** This Court has previously used a longer list of nonexclusive criteria for evaluating good faith in Chapter 13 known as the "*Warren* factors". *In re Pickering,* 195 B.R. 759, 764

(Bankr.D.Mont.1996); *In re Warren,* 89 B.R. 87, 90 (9th Cir. BAP 1988); *see Goeb,* 675 F.2d at 1390.

*Campbell,* 38 B.R. 193, 196 (Bankr. E.D.N.Y.1984); *In re Fischel,* 103 B.R. 44, 48–49 (Bankr.N.D.N.Y.1989). The exception is where a nondebtor affirmatively acts or legally obligates himself or herself to dedicate his or her income to the debtor's plan. *Jordan,* 226 B.R. at 119–20; *Fischel,* 103 B.R. at 49 (unmarried individuals who shared living arrangements and mutual reliance on each other but did not show affirmative action by the nondebtor to legally obligate himself was deemed insufficient to constitute regular income).

Since Wood was not Gress's spouse, she had no duty to support or contribute to Gress's household under Montana law. *Jordan,* 226 B.R. at 119; Mont.Code Ann. §§ 40–2–101 & 102. While § 521(1) requires a debtor to file a schedule of current income, and the official form for Schedule I requires a spouse's income, neither by itself requires the inclusion of a nondebtor's income who is not a debtor's spouse.

Wood did not affirmatively act to legally obligate herself to contribute her income to Gress. While she signed the note together with Gress to Associates, that obligated her to Associates, not to Gress. Nothing in this record shows any evidence that Gress legally obligated herself to contribute her income to his support. On the contrary, all the evidence in this record shows she contributed nothing to his household expenses. Thus, based upon the totality of the circumstances in this case, Gress's failure to list her income does not establish his lack of good faith. The Court finds that Gress filed his Chapter 13 petition and plans in good faith. The Trustee's objection to Gress's modified Plan and motion to dismiss is denied.

What remains is to determine whether Gress's modified Plan satisfies the requirements of § 1329. The Trustee's only objection was based upon lack of good faith. Otherwise, the modified Plan seeks only to eliminate the payments to Montana Auto Finance, and to provide for Associates' secured claim on the pickup at paragraph 2(b). The Court concludes those aims consistent with § 1329(a), and the modified plan is approved.

IT IS ORDERED the Trustee's objections to modification and motion to dismiss, filed September 13, 2000, are denied; Debtor's motion, filed September 7, 2000, for modification of his confirmed Chapter 13 Plan is granted, and the Debtor's modified Chapter 13 Plan filed September 7, 2000, is confirmed.